COWLEY *v.* NORTHERN PAC. R. CO.

*(Circuit Court, D. Washington, E. D.* April 15, 1891.)

EQUITY—ADEQUATE REMEDY AT LAW—VACATION OF JUDGMENT.

Where, in a suit in the territorial district court of Washington, judgment is rendered upon a stipulation of counsel made in contravention of defendant's instructions to his attorney, he has a proper and adequate remedy by a motion to vacate under the Code, and equity will not take jurisdiction of a bill to annul and enjoin the execution of the judgment filed before the time within which a motion to vacate could have been made had expired.

In Equity. Bill for injunction.
*George Turner,* for plaintiff.
*J. H. Mitchell, Jr.,* for defendant

HANFORD, J. This case was commenced in the district court of the territory of Washington for the fourth judicial district, and, according to the practice in such cases under a statute of the territory, it was tried before a referee, who reported to that court the evidence introduced by

the parties, and also his findings of fact and conclusions of law. Objections to the report of the referee were filed, but before a hearing could be had thereon the admission of the state into the Union, and the consequent reorganization of the courts, intervened, and the case has been in due course transferred to this court. The plaintiff has moved against the report to set aside the findings of fact as a whole, and also to set aside the conclusions of law. The objections to the findings of fact in their entirety will be denied for the reason that a general objection is not good. It is necessary for a party complaining of error to specify the error. The plaintiff also moves to set aside the findings contained in the 7th, 8th, 11th, 19th, 20th, and 21st paragraphs of the findings of fact as not being supported by sufficient evidence, and as embodying legal conclusions, rather than conclusions of fact. I deny the motion as to the 7th, 8th, 11th, and 20th, and sustain it as to the 19th and 21st. The 19th is a finding with relation to a power of attorney executed by the plaintiffs to Mr. Albert Hagan. I think the whole of the controversy relating to the power of attorney is irrelevant in this case. The power of attorney was not pleaded in the defendant's answer as a matter on which the defendant relied, and the testimony in the case shows that in all the proceedings and transactions between the parties affecting the material issues in the case this power of attorney was ignored,—was not acted upon. There was no attempt to compromise the controversy between the parties through the medium of the attorney in fact by virtue of that power, and I think that the claim now asserted by the defendant in relation to the power of attorney is an after-thought. The twenty-first paragraph is unnecessary, in so far as it relates to mere facts; and in so far as it is a conclusion of law it is improper, if not erroneous; so that will be stricken out. The defendant has also filed exceptions to certain findings of fact that are specified, which exceptions are all overruled by the court; and the court now adopts the findings reported by the referee, excepting the nineteenth and twenty-first paragraphs, as the basis of this decision. They are as follows:

"*First.* That the Northern Pacific Railroad Company, [the defendant in this case,] on the 29th day of June, 1886, commenced an action in the district court, fourth judicial district, Washington Territory, sitting in and for Spokane county, against H. T. Cowley, plaintiff in this case, to recover possession of certain lands in the complaint in that case described.

"*Second.* That said H. T. Cowley, [plaintiff in this case,] for answer to the complaint in the above-described suit, filed his answer, claiming equitable relief thereby, to-wit, specific performance of a contract to convey to him the land described in the complaint.

"*Third.* That on or about the ———— day of April, 1887, the firm of Ganahl & Hagan, a law firm composed of Frank Ganahl and A. Hagan, were employed by Cowley to represent him in his defense in the case of *N. P. R. R. Co.* vs. *Cowley*, under a contract whereby they were to receive one-fourth of all money or land recovered by Cowley.

"*Fourth.* That at the November, 1887, term of the district court Emma Thomson was appointed referee to take evidence in the case, and as such referee caused the parties to appear before her at her office in the city of Spokane Falls on the 10th day of May, 1888, to take said testimony. The N. P.

R. R. Co. appeared by its attorney, J. H. Mitchell, Jr., and the defendant, Cowley, by Ganahl & Hagan, his attorneys. Upon agreement of parties, taking of testimony was postponed until May 11th, the same being the next day,

"*Fifth.* That upon the said 10th day of May, 1888, Paul Schulze, general land agent of the N. P. R. R. Co., and its duly-authorized agent, upon behalf of the company, made a proposition of settlement to Ganahl & Hagan, attorneys for Cowley, of the differences concerning the land in dispute in case of *N. P. R. R. Co.* vs. *Cowley*, the proposition being this: The railroad company would give Cowley $8,000 cash, and convey to him a tract of land upon which Cowley's improvements were, and comprising about seven and one-half acres; the company to retain the balance of the land.

"*Sixth.* That Ganahl & Hagan thereupon informed Cowley of the proposition, and what it was, and advised him to accept it, as there was an estoppel in his case that would prevent him from recovering the land, in their judgment.

"*Seventh.* That upon the evening of said 10th day of May, 1888, said Schulze, Hagan, and Mitchell went to the residence of Cowley in the city of Spokane Falls, and met there Cowley and Mrs. Cowley, his wife. The proposition above referred to was discussed by them, and an oral agreement of settlement, settling their differences, was entered into, which agreement was in substance as follows, to-wit: The R. R. Co. was to give Cowley $8,000 and a tract of land upon which Cowley's improvements were, embracing about seven and one-half acres. The R. R. Co. was to retain the balance of the land. Schulze further agreed to give Mrs. Cowley, or any person she might designate, two lots of land for church purposes; these two lots were to be given by Schulze personally. The R. R. Co. was to pay all costs that had been incurred in the case. The respective attorneys in the case were to prepare all necessary papers for settlement, but nothing was said as to the kind and character of papers necessary. The $8,000 and papers were to be sent to J. N. Glover, president of the First National Bank, Spokane Falls, W. T., who should deliver the same to Cowley or his attorneys; and it was calculated that the money and these papers would arrive about the 16th day of May following. Nothing was said as to the manner in which the case of the *N. P. R. R. Co.* vs. *Cowley* should be disposed, further than that a disposition of the same should be made by the attorneys.

"*Eighth.* That on Monday, the 14th day of May, 1888, Schulze secured a draft for $8,000, payable to the order of J. N. Glover; also had prepared a certificate of sale from the N. P. R. R. Co. to Cowley, duly executed by the company, conveying to Cowley the seven and one-half acres mentioned in the agreement of settlement; also a plat of said land; and also a quitclaim deed from Cowley and wife to the R. R. Co. for all land claimed by the company in the complaint; placed these all in an envelope, and sent the same to J. N. Glover. In said envelope was also a letter of instructions to Glover, directing him to see Cowley and his attorneys, and, upon Cowley signing and executing the quitclaim deed, he should turn over and deliver to them the money, certificate of sale, and plat. All of said documents and money were received by said Glover on the 16th day of May.

"*Ninth.* On the 15th day of May, 1888, Cowley went to the office of one of his attorneys, to-wit, Hagan, and informed him that he was dissatisfied with the settlement, and that he desired to employ associate counsel to assist them, (Ganahl & Hagan,) to which Hagan objected, except they (Ganahl & Hagan) should be paid the amount due them for their fees; whereupon negotiations for settlement of fees were entered into between them.

"*Tenth.* That on the 15th day of May Cowley also sent a telegram to Schulze to the effect that he must have additional time to consider proposition of settlement, which was received by Schulze upon same date, and was answered by

him to the effect that there was nothing to consider; settlement had been made, papers and money had been sent.

"*Eleventh.* That upon receipt of money and papers on the 16th day of May Glover at once took all papers to the office of Ganahl & Hagan, where he found both members of the firm; also Cowley. Glover informed them that he had received all the papers and money. He gave one of the attorneys the papers, and also exhibited to them his letter of instructions. He informed them that the money would be paid as soon as Cowley and wife would execute and deliver the quitclaim deed. He was informed that the matter would be attended to that day, and he would be called upon to pay the money. After Glover left, and upon same day, Cowley and wife refused to execute the quitclaim deed, and have so refused ever since said time. The money is now and has ever since said time been in Glover's hands, and ready to be turned over to Cowley upon delivery of quitclaim deed duly executed.

"*Twelfth.* That on the 17th day of May Cowley wrote and sent Mitchell and Schulze each a letter to the effect that the proposition of compromise had not been accepted; that Ganahl & Hagan had been discharged as his attorneys, and were not authorized to represent him, and all further communications should be made through his attorneys, Blake & Ridpath; which letters were received by them about the 19th day of May, and upon that day they each wrote Cowley to the effect that they would recognize no other attorneys in the case without the charges of former counsel were paid, and the names of other attorneys substituted by order of the court.

"*Thirteenth.* That on the said 17th day of May Cowley wrote a letter to Ganahl & Hagan, and had the same delivered to them, to the effect that he discharged them as his attorneys, and had employed other counsel to represent him. Upon same date Ganahl & Hagan wrote and had delivered to Cowley a letter to the effect that they demanded $4,000 for their fee, and would consider no less sum, and also that they had on motion set case down for taking testimony to commence on Monday, May 21st.

"*Fourteenth.* That upon the 18th day of May the referee, Emma Thomson, issued a citation to Mitchell, as attorney for the R. R. Co., and Ganahl & Hagan, as attorneys for Cowley, to the effect that on the 21st day of May she would proceed to take testimony in the case of the *R. R. Co.* vs. *Cowley,* one of which notices is filed herewith, and made a part hereof, and marked 'Exhibit ——.' Thereupon, upon the same day, to-wit, May 18, 1888, said Cowley telegraphed said Mitchell, as such attorney, that he could not take testimony on Monday, as he had changed attorneys. On the same day, in answer thereto, said Mitchell telegraphed said Cowley that he had never arranged for taking testimony on Monday, or any time subsequent to May 10th, when, as he said, counsel gave them to understand no taking of testimony would b necessary; and saying that Mr. Schulze, his principal witness, relying on Cowley's word since broken, had made engagements making it impossible for him to go to Spokane Falls in said case for several weeks, and that the case would not go on until Schulze could go, and he (Cowley) could depend on that; and he added: 'If you must have a fight, you shall have it.' Said telegram is filed herewith, and made a part hereof, and marked 'Exhibit —— '

"*Fifteenth.* That the 21st day of May, 1888, was the first day of the May, 1888, term of the district court, upon which date a stipulation was entered into by Mitchell, as attorney for the N. P. R. R. Co., and Ganahl & Hagan, as attorneys for Cowley, to the effect that the case of *N. P. R. R. Co.* vs. *Cowley* had been settled and compromised, and upon payment to defendant, H. T. Cowley, or his attorneys for said Cowley, of the sum of $8,000 and the delivery to him or his attorneys of a certificate or deed duly executed for seven and one-half acres of land at or near defendant Cowley's house, as agreed upon, judgment for plaintiff then to be entered for the restitution of the premises mentioned in plain-

tiff's complaint as therein prayed for, and denying the relief prayed for in defendant's answer or cross-bill, at plaintiff's costs; which stipulation was filed in court with the papers in the case of *R. R. Co.* vs. *Cowley.*

"*Sixteenth.* That Ganahl & Hagan executed and signed a receipt as follows, to-wit:

" ' We hereby acknowledge receipt from the Northern Pacific Railroad Company of a certificate of sale in nature of contract to convey to the said H. T. Cowley the land described in the stipulation heretofore made herein as being about seven and one-half acres of land at or near defendant's house, and of the receipt this day from said company of the sum of eight thousand dollars, placed in the First National Bank of Spokane Falls, subject to our order for said Cowley as agreed upon, and hereby acknowledge the terms of said stipulation and the settlement therein mentioned to have been fully complied with and full satisfaction made thereof.

" 'GANAHL & HAGAN, Attorneys for defendant, H. T. Cowley.

" '*Dated May* 21, 1888.'

"Ganahl & Hagan have never received the $8,000. That money is the same heretofore mentioned as being in the possession of J. N. Glover, and subject to the order of Ganahl & Hagan, under certain restrictions mentioned.

"*Seventeenth.* That upon the said 21st day of May, 1888, upon filing the stipulation and receipt above described, judgment was rendered for the plaintiff and against Cowley for possession of all the land except the seven and one-half acres previously described herein, and the relief prayed for by Cowley was denied.

"*Eighteenth.* That Cowley did not know that the above-described stipulation had been entered into by the attorneys, nor that the receipt set forth had been given, nor that the judgment had been rendered and entered until all had been done; and upon hearing of the same he at once made known his objections to such stipulation and judgment, and protested against it, and has so protested ever since said time. This action was instituted to set aside that judgment and decree.

"*Twentieth.* That upon the 21st day of May, 1888, Ganahl & Hagan were the duly-authorized and acting attorneys for Cowley in the case of *N. P. R. R. Co.* vs. *Cowley,* and had full power to act as such."

Upon this state of facts it becomes a question as to what the rights of the parties are as regards the case which, as claimed by the defendant, was compromised and finally adjudicated in the district court. The plaintiff is in a court of equity, seeking purely equitable relief, and he does not stand in a very good light. It appears that he is not only seeking to annul the action of the court by which he claims important rights of his have been unjustly cut off, but the object of this suit is to reach beyond and cancel an agreement which he voluntarily made to compromise that case. Admitting that he was acting under the advice of his counsel, and that the advice given upon the questions of law involved was predicated upon an erroneous and unsound opinion, still, as I view the matter, considering the delays and uncertainty of litigation, no good lawyer would probably do less than Mr. Hagan did in advising Mr. Cowley as to the propriety and wisdom of accepting the proposition then made; and I cannot find that there was any bad faith on the part of the plaintiff's attorneys that would justify him in attempting to recede from his agreement made after deliberation and with a full understanding of the facts. However, there was only an understanding be-

tween the parties as to the terms upon which the compromise would be concluded. The terms of the compromise were agreed to, but the agreement was not of itself operative to effect a compromise or authorize the court to render a judgment to enforce any of its provisions. The agreement, even if it were binding in law and equity upon Mr. Cowley, has never been executed, never has been carried into effect. It has never been performed on the defendant's part, so as to entitle it to any judgment in the district court in the original case; and it is not by virtue of any executed agreement between the parties that the railroad company can claim that the judgment was properly entered. The stipulation that was signed by Ganahl & Hagan as attorneys for Mr. Cowley was not only unauthorized, but it was made in defiance of his known wishes in the matter. The judgment rendered on that stipulation was therefore improperly rendered, and it was unjust. I have no hesitation in saying that if the judgment were moved against in any proper way it should as a matter of right be vacated. But is the plaintiff entitled to such relief in this separate suit in equity? This I find to be the serious and difficult question in the case. It is a fundamental principle of chancery practice that relief is granted only when necessary to protect a right, or prevent the doing of irreparable mischief; and necessity for such relief cannot be claimed unless the party asking for it is without a remedy at law. The court will be careful to not encroach upon another jurisdiction, and it will not in any case revise or attempt to correct errors in proceedings of other courts. In harmony with these principles, the court must decline to interfere by annulling or enjoining the execution of an unjust judgment, if the same result can as well be obtained by a motion or petition in the original case, and only when the court which rendered the unjust judgment is closed to an application, or powerless to grant relief, can a court of equity in a distinct suit exert its extraordinary power. In this state the statutes contain provisions affording specific and ample relief to all persons having cause of complaint similar to that of this plaintiff. He could, under the statute, upon the showing which he has made in this suit, have successfully urged a motion to vacate the judgment complained of. The time allowed by the statute for making such motion did not expire until after this suit was commenced. The remedy at law was adequate. This suit was unnecessary, and therefore the court will refuse to aid the plaintiff. This rule is better stated in section 362 of Black on Judgments, (volume 1:)

"The liberal practice of the courts in granting new trials and entertaining motions to vacate or open their own judgments, and the enactment of statutes in many of the states authorizing the setting aside of judgments taken against a defendant ' through his mistake, inadvertence, surprise, or excusable neglect,' have considerably abridged the province of equity in giving relief by injunction; and the rule is generally adhered to, as the more safe and conservative principle, that equity will not grant relief against an execution if the party can equally well be relieved, on motion, in the court which issued the execution or has control of it. It is true that some cases maintain a different view, holding that, although the judgment might be vacated or set aside on motion, and although the time for so moving has not yet expired,

still equity may enjoin the enforcement of the judgment. But in so holding they depart from the fundamental principles of equity, and are not to be commended."

I have examined the following authorities, cited by this author, and find that they support the doctrine of the text: *Imlay* v. *Carpentier*, 14 Cal. 173; *Bibend* v. *Kreutz*, 20 Cal. 109; *Logan* v. *Hillegass*, 16 Cal. 201; *Hintrager* v. *Sumbargo*, 54 Iowa, 604, 7 N. W. Rep. 92; *Simson* v. *Hart*, 14 Johns. 63. In the case reported in 20 Cal. the court, in its opinion, states the reason for the interference of equity in cases similar to this one in a quotation from Story's Equity Jurisprudence as follows:

"It may be stated that in all cases where by accident, or mistake, or fraud, or otherwise, a party has an unfair advantage in proceedings in a court of law, which must necessarily make that court an instrument of injustice, and it is therefore against conscience that he should use that advantage, a court of equity will interfere, and restrain him from using the advantage which he has thus improperly gained."

And in the same connection the opinion states the general rule as follows:

"The assistance of equity cannot be invoked so long as the remedy by motion exists."

But one other argument remains to be considered. This suit was commenced in the court that rendered the judgment sought to be vacated. The bill—denominated a "complaint" under the practice in the territorial court—contains all the matter required by the statute to be set forth in a motion or petition to vacate a judgment, and it is urged that this independent suit may therefore be regarded as in effect the same thing as a proceeding under the statute to vacate a judgment by an order of the court which rendered it. I consider, however, that this suit is not the same as a proceeding under the Code. The rights of the parties and the limitations of their rights in such a statutory proceeding are quite different from the rights and limitations, and the rules which must govern the decision of a suit in equity. It would be contrary to the principles of equity, after a cause has been conducted as this case has, through all the stages of a regular suit to a final hearing, to now transform it into a summary proceeding under the statute. The plaintiff has, in my opinion, mistaken his remedy, and for that reason his suit must be dismissed.

### ON REHEARING.
#### (May 19, 1891.)

After carefully considering the arguments and authorities cited on the motion for a rehearing of this cause, I still feel constrained to adhere to the decision already given, and to rest the decision of the case on the grounds stated in the opinion on file. There is something more than a difference of mere form between a suit in equity by an original bill to vacate a judgment or decree and a proceeding under the Code,—a difference which is made plain by the following extracts from the opinion of the supreme court of the United States in the case of *Barrow* v. *Hunton*, 99 U. S. 82, 83:

"The question presented with regard to the jurisdiction of the circuit court is whether the proceeding to procure a nullity of a former judgment in such a case as the present is or is not in its nature a separate suit, or whether it is a supplementary proceeding, so connected with the original suit as to form an incident to it, and sustantially a continuation of it."

"The distinction between the two classes of cases may be somewhat nice, but it may be affirmed to exist. In the one class there would be a mere revision of errors and irregularities, or of the legality and the correctness of the judgments and decrees of the state courts; and in the other class the investigation of a new case arising upon new facts, although having relation to the validity of an actual judgment or decree, or of the party's right to claim any benefit by reason thereof."

This court has not acquired jurisdiction of the original case. To effect a transfer thereof from the territorial district court and invest this court with jurisdiction it is essential that a request in writing by one of the parties be filed in the "proper court." 25 U. S. St. 683, § 23. This has not been done, and no part of the record of that case has come into the custody of this court. The parties have not even seen fit to offer either the original record or a copy as evidence on the trial. Therefore, if we are dealing with a statutory proceeding supplementary to the judgment assailed, and not with a new and distinct suit, the court can do nothing else than dismiss it for want of jurisdiction. As to the question whether the right to sue in equity remains, notwithstanding the statutory provisions for proceeding in the original case to obtain the vacation of a decree or judgment improvidently rendered, or obtained by fraud, there is said to be a conflict of authorities, and a number of cases have been cited, including decisions of the supreme court, containing *dicta* to this effect. I think, however, that the rules given in the authorities which I have heretofore cited are founded in reason and the elementary principles of equity jurisprudence, and the court is not required to disregard them by reason of any authorities to which my attention has been directed. In the argument for a rehearing it has been urged, however, that by the removal of the cause into a United States court, in which the modern practice of mingling law and equity in one form of proceeding is not permissible, the parties have acquired new rights, and are entitled in this court to have a decision according to equity unaffected by local legislation; and the plaintiff claims that he is entitled to the same relief, and that the court should proceed in this cause in the same manner, as if it had been originally commenced in this court, and had proceeded therein from its inception, according to the true equity practice; and it is urged that the court cannot now say to this plaintiff that because he could have obtained relief in a different form of proceeding, and in another forum, this court will not entertain his cause, or grant him the relief to which he is in equity entitled, for to thus hold would be equivalent to saying that a statute of the state has intervened as a bar to obtaining equitable relief in this court, and to that extent has abridged the equity power and jurisdiction of a national court. I think, however, that the rights of the parties involved in this case were fixed by existing laws prior to the time of the creation of this court, and that

the case should be decided so as to give each party all, but no greater, rights than he could obtain under the laws existing at the time the suit was commenced.