COWLEY et al. v. CITY OF SPOKANE et al.

(Circuit Court, D. Washington, E. D. February 17, 1900.)

1. DEDICATION OF STREETS—FAILURE OF DEDICATOR'S TITLE—RATIFICATION BY TRUE OWNER.

A decree in a suit involving the title to real estate, entered upon a stipulation by which the prevailing party relinquished all claim to certain portions of the property, which the other party had platted into lots and sold, —such lots being designated in the stipulation and decree by reference to the recorded plats,—operates also to confirm in the public the title to the streets dedicated by such plats, and upon which the lots released abut.

2. MUNICIPAL CORPORATIONS—IMPROVEMENT OF STREET—ESTOPPEL OF OWNER.

Where a landowner permits a city which is vested with the power of eminent domain to expend money or incur liability in grading and otherwise improving streets laid out over his property, without taking active steps to prevent, he is estopped thereafter to assert his right to possession of the land occupied by such streets, although they were occupied by the city under a dedication made by an adverse claimant of the property, and without his consent.

3. SAME—SPECIAL ASSESSMENTS.

Such estoppel, however, does not extend to assessments made by the city upon abutting property of such owner for the cost of improving the streets, so as to prevent him from contesting the validity of such assessments.

4. SAME—ASSESSMENTS FOR STREET IMPROVEMENT—CONSTITUTIONALITY.

Special assessments levied on abutting property for the cost of street improvements under the statutes of Washington, which require the assessment of the entire cost of such improvements on the abutting property, and which are levied by the front-foot rule, or other methods having no reference to benefits accruing thereto, are in violation of the provision of the constitution of the United States against the taking of private property for public use without just compensation.

This is a suit in equity to determine the right of the city of Spokane to certain streets, and to enjoin the enforcement of special assessments for their improvement.

R. B. Blake and F. H. Graves, for complainants.

A. G. Avery and F. M. Dudley, for defendants.

HANFORD, District Judge. This is a suit in equity to obtain a declaratory decree as to the right of the city of Spokane to continue in the use and enjoyment of certain streets crossing lands owned by the complainants, the land within the boundaries of said streets not having been purchased, condemned, or dedicated by the owner for the use of the public, and also to restrain the city and its officials from proceeding to enforce against the property of the complainants abutting upon said streets liens for assessments levied by the city, pursuant to its charter and the laws of the state, to pay the cost of grading several of said streets and constructing sidewalks. The parties to this suit have agreed as to all the material facts, and have set the same forth in a stipulation, a condensed statement thereof being as follows: Several years before the construction of the Northern Pacific Railroad, Mr. Cowley, one of the complainants, obtained a contract from the railroad company giving him the right to purchase a tract, including the land in controversy, for a stipulated price, and thereupon took possession of the tract and made valuable improvements. After he had made said improvements, and had actually occupied the premises for several years, the railroad company denied its obligation to sell the land to him, and commenced an action against him to recover possession. Cowley defended the action, and also filed a cross complaint setting up his right to the land under the contract, and praying for a decree for specific performance of the contract, which was permissible under the practice of the territorial district court in which the action was brought. The case was pending many years in the territorial court and in this court, to which it was transferred, and in the supreme court of the United States. See Cowley v. Railroad Co. (C. C.) 46 Fed. 325; Id., 159 U. S. 569, 16 Sup. Ct. 127, 40 L. Ed. 263. And a decision on the merits was finally rendered by this court in favor of Cowley in the year 1898. Very soon afterwards the parties agreed to settle the controversy, and a decree was entered in accordance with the terms agreed to and stipulated by them. While said case was in progress, Cowley and his wife, in consideration of professional services to be rendered by their co-complainants, contracted with them to convey to them an undivided interest in the property. The railroad company platted a portion of the land as additions to the city of Spokane, and assumed to dedicate for public use the streets laid off on said plats, and also sold, and assumed to convey the title to, a number of lots shown upon said plats. After said plats had been filed for record the city of Spokane caused some of the streets to be improved by grading the same and constructing sidewalks, pursuant to its charter and the laws of the state, which require that the entire cost of such improvements be raised by local assessments upon the property abutting upon streets so improved, and levied assessments upon the property owned by the complainants for a portion of the cost of said improvements. It is a stipulated fact that the city officials, in making assessments for the improvements referred to, gave no consideration to the benefits to accrue or injury which might result to the abutting property by reason of said improvements, and did

not apportion the costs or assess the abutting property with reference to any special benefit to said property, but made the assessment upon an ad valorem basis, or else upon the per front foot plan. The complainants deny the validity of the plats on the ground that they were the true owners of the property when the platting was done, and, Mr. Cowley being in actual and visible adverse possession, the railroad company could not by any act create an interest in or right to any part of the land without their consent; and they contend that the city, in all that was done in making the improvements, was a mere trespasser. It is stipulated, however, that the complainants took no steps to restrain the city from making expensive improvements in said streets, except that Mr. Cowley, at or before the commencement of the first improvements, notified the mayor of the city that he claimed to own the property, and that the railroad company had no authority to make the plats or dedicate the streets. All the street improvements referred to were fully completed several years before the stipulation upon which the decree in said case was entered. Said stipulation was assented to by all the complainants in this case, and, among other things, it contains a relinquishment on the part of Cowley and wife of all claims to certain parts of the land, and as consideration for such relinquishment the railroad company paid them a sum of money. This arrangement was made for the purpose of confirming the titles conveyed by the railroad company to numerous vendees of lots shown upon said plats, and described the lots so relinquished by reference to said plats.

The stipulated facts eliminate from the controversy some of the streets and some of the property claimed by the complainants' bill. The decree to be entered will therefore declare against their claim to Sprague street, and to that part of Bernard street which is south of Third avenue, and all of Fernhill addition. As to the remaining portion of the property covered by the plats, I hold:

1. The agreement and stipulation of the parties upon which the decree above referred to was made must necessarily have the effect to confirm the title of the Northern Pacific Railroad Company's vendees to the ground within the boundaries of the lots sold to them, and also confirms the right of the public to the use of all the streets shown in the plats of Second addition to Railroad addition and Fourth addition to Railroad addition. These purchasers are entitled to have their lots with the boundaries described (that is to say, the streets shown by the plats); and the complainants, by referring to the plats in their stipulation for the purpose of describing and identifying the particular lots which they relinquished for a money consideration, have in fact adopted said plats for that purpose, and by adoption have ratified the plats as recorded. It is impossible to give full effect to the stipulation and decree without recognizing the streets in the plats therein referred to as public streets, and the complainants are therefore estopped from disputing the lawful dedication of the streets shown by the plats of said additions, whether the same have been accepted or used or improved by the city or not. This estoppel, however, extends only to the Second

and Fourth additions to Railroad addition, and does not affect the rights of the complainants in and to Cliff Park addition nor First addition to Fourth addition to Railroad addition. In my opinion, the complainants have a clear title to all of said Cliff Park addition in its entirety, including the streets, to the same extent as if no plats thereof had ever been recorded.

2. I hold, also, that the complainants have a complete title to all of First addition to Fourth addition to Railroad addition, including the streets therein, except Pacific avenue and Second avenue, both of which have been graded. The labor and expense of making said improvements, and the possession and use of the street as a public thoroughfare, create a right in favor of the public superior to any right of the defendants to have possession of the area within the boundaries of said streets. In the case of Roberts v. Railroad Co., 158 U. S. 1–30, 15 Sup. Ct. 756, 39 L. Ed. 873, it was decided by the supreme court of the United States that if a landowner, knowing that a railroad company has entered upon his land and is engaged in constructing its road without having complied with a statute requiring either payment by agreement or proceedings to condemn, remains inactive and permits it to go on and expend large sums in the work, he is estopped from maintaining either trespass or ejectment for the entry, and will be regarded as having acquiesced therein, and will be restricted to a suit for damages. The city of Spokane is a municipal corporation, in which the power of eminent domain is vested, and it has the control of public streets and thoroughfares within its limits. I consider the rule applied by the supreme court in the case of Roberts v. Railroad Co. to be eminently just, and that it is applicable to cases where landowners have knowingly permitted a city government to incur expense or liability in the actual improvement of a thoroughfare required for the use and convenience of its inhabitants.

3. The estoppel which prevents the complainants from asserting a right to the possession of streets does not extend further, and does not have the effect to validate the liens for assessments levied by the city upon the complainants' property for the cost of street improvements. The acts from which the estoppel results were subsequent in time to the unauthorized assumption by the city of the right to levy the assessments. The assessments, being unlawful at the time they were made, do not become valid, as against the complainants, by their subsequent acquiescence in the dedication of the streets; there being no evidence of an intention in the mind of any of the parties that the complainants should become liable for the assessments, or waive their rights to resist the collection thereof. It is one thing for an owner of land to give up part of his land to the public for a highway, and quite a different thing for him to assume an obligation to pay the cost of grading and improving the highway.

I consider, also, that the stipulated facts entitle the complainants to a decree restraining the city from collecting the assessments, on the ground that they were made under a system for making local assessments which is contrary to the guaranty of the constitu-

'ion of the United States that private property shall not be taken for public use without just compensation. There is a flagrant disregard of this principle whenever an attempt is made to levy a special assessment for a local public improvement without reference to the particular benefit to accrue to the property subjected to such special assessment by reason of the improvements. Streets and highways are for the use and convenience of the public, and private property can only be burdened with the cost of improving the same upon the theory that the improvements have a direct tendency to enhance the value of land in the immediate vicinity to a much greater degree than property more remotely situated, and it is just that the property so benefited should be required to contribute a proportionate share of the expense of creating such increased value. It is quite difficult to divide the expense between the general public, having the enjoyment of the use of streets, and the property specially benefited, according to a ratio that will be exactly just. Still, the burden must be distributed. Formerly the statutes of this state or of Washington territory provided a method of distributing the burden in incorporated cities by requiring each municipal government to raise a general fund by annual taxation, and the estimated cost of grading and paving the area of street intersections and specified kinds of improvements and repairs had to be paid out of this general fund, but the statutes have been amended from time to time so as to burden the abutting property with the entire cost of all improvements and repairs. This rule is repugnant to the last clause of the fifth amendment to the constitution of the United States. This subject received consideration by the supreme court of the United States in the case of Village of Norwood v. Baker, 172 U. S. 269–303, 19 Sup. Ct. 190, 43 L. Ed. 447. The opinion of the court, by Mr. Justice Harlan, contains the following expressions:

"But the power of the legislature in these matters is not unlimited. There is a point beyond which the legislative department, even when exerting the power of taxation, may not go, consistently with the citizen's right of property. As already indicated, the principle underlying special assessments to meet the costs of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not in fact pay anything in excess of what they receive by reason of such improvement. But the guaranties for the protection of private property would be seriously impaired if it were established as a rule of constitutional law that the imposition by the legislature upon particular private property of the entire cost of a public improvement, irrespective of any peculiar benefits accruing to the owner from such improvements, could not be questioned by him in the courts of the country. It is one thing for the legislature to prescribe it as a general rule that property abutting on a street opened by the public shall be deemed to have been specially benefited by such improvement, and therefore should specially contribute to the cost incurred by the public. It is quite a different thing to lay it down as an absolute rule that such property, whether it is in fact benefited or not by the opening of the street, may be assessed by the front foot for a fixed sum, representing the whole cost of the improvement, and without any right in the property owner to show, when an assessment of that kind is made or is about to be made, that the sum so fixed is in excess of the benefits received. In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation.

We say 'substantial excess,' because exact equality of taxation is not always attainable, and for that reason the excess of cost over special benefits, unless it be of a material character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment."

The learned justice also quotes from Dillon's treatise on Municipal Corporations, and comments thereon, as follows:

" 'Special benefits to the property assessed (that is, benefits received by it in addition to those received by the community at large) is the true and only just foundation upon which local assessments can rest; and, to the extent of special benefits, it is everywhere admitted that the legislature may authorize local taxes or assessments to be made. * * * When not restrained by the constitution of the particular state, the legislature has a discretion, commensurate with the broad domain of legislative power, in making provisions for ascertaining what property is specially benefited, and how the benefits shall be apportioned. This proposition, as stated, is nowhere denied. But the adjudged cases do not agree upon the extent of legislative power.' While recognizing the fact that some courts have asserted that the authority of the legislature in this regard is quite without limits, 'the author observes that 'the decided tendency of the later decisions, including those of the courts of New Jersey, Michigan, and Pennsylvania, is to hold that the legislative power is not unlimited, and that these assessments must be apportioned by some rule capable of producing reasonable equality, and that provisions of such a nature as to make it legally impossible that the burden can be apportioned with proximate equality are arbitrary exactions, and not an exercise of legislative authority.' Dill. Mun. Corp. § 761. He further says: 'Whether it is competent for the legislature to declare that no part of the expense of a local improvement of a public nature shall be borne by a general tax, and that the whole of it shall be assessed upon the abutting property and other property in the vicinity of the improvement, thus for itself conclusively determining not only that such property is specially benefited, but that it is thus benefited to the extent of the cost of the improvement, and then to provide for the apportionment of the amount by an estimate to be made by designated boards or officers, or by frontage or superficial area, is a question upon which the courts are not agreed. Almost all of the earlier cases asserted that the legislative discretion in the apportionment of public burdens extended this far, and such legislation is still upheld in most of the states. But since the period when express provisions have been made in many of the state constitutions, requiring uniformity and equality of taxation, several courts of great respectability, either by force of this requirement, or in the spirit of it, and perceiving that special benefits actually received by each parcel of contributing property was the only principle upon which such assessments can justly rest, and that any other rule is unequal, oppressive, and arbitrary, have denied the unlimited scope of legislative discretion and power, and asserted what must, upon principle, be regarded as the just and reasonable doctrine,—that the cost of a local improvement can be assessed upon particular property only to the extent that it is specially and peculiarly benefited, and, since the excess beyond that is a benefit to the municipality at large, it must be borne by the general treasury.' "

A decree will be entered in favor of the complainants for the relief prayed for, except with respect to the possession of Sprague avenue, Pacific avenue, Second avenue, all the streets in the Second and Fourth additions to Railroad addition, all of Fernhill addition, and the several lots and blocks which Cowley and wife relinquished by the stipulation upon which the decree in the case of Cowley v. Railroad Co., supra, was based. Although the complainants are not entitled to all the relief prayed for in their bill of complaint, they are the prevailing parties, and are entitled to recover costs. I do not find that they have vexatiously increased the costs of this case by claiming something in excess of what they are entitled to recover. Therefore I disallow the defendants' claim for costs.