MABURY v. LOUISVILLE & J. FERRY CO. et al.

(Circuit Court of Appeals, Seventh Circuit. March 6, 1894.)

No. 25.

1. FERRY—REAL PROPERTY.
   A ferry franchise is real property.

2. ESTOPPEL IN PAIS—RECITALS IN AGREEMENT.
   The owners of a ferry signed articles of association which recited the interests of the different owners. In these articles, W. was stated as owning one-twelfth. At the date of the articles he owned no interest, but at the time the articles were adopted he had acquired the interest of his mother, who owned one-twelfth for life, and claimed to own it in fee. The reversionary estate in this one-twelfth was really owned by M., who signed the articles as owner of another share. At that time, and afterwards, M. always claimed to own this reversionary twelfth. *Held*, that the recital in the articles did not estop M. from asserting title to the twelfth interest after the death of the life tenant.

3. SAME—PLEADING.
   An estoppel by recitals in a contract, being a species of estoppel in pais, cannot be availed of, when not specially pleaded.

4. CORPORATIONS—ISSUE OF STOCK—DEED.
   The owner of a life estate in certain property, who claimed also to own the fee, quitclaimed the property to a corporation for an expressed consideration of certain shares of the corporate stock. The title to the reversionary estate being understood to be in dispute, the corporation issued no certificate for such stock, but paid the dividends thereon to the life tenant, and allowed her to vote it during the continuance of the life estate. *Held* that, on termination of the life estate, the corporation was not bound by its deed to deliver a certificate of the shares to the life tenant, it being proved that she did not own the reversion.

Appeal from the Circuit Court of the United States for the District of Indiana.

Action by Nora Adams against the Louisville & Jeffersonville Ferry Company to compel it to issue to her a certificate for 166⅔ shares of its capital stock, which she claimed to own. The defendant the ferry company instituted a second action in the circuit court of the United States for the district of Indiana against Mrs. Adams and Hiram Mabury, in the nature of a bill of interpleader, calling upon them to assert their respective claims to the stock which was the subject-matter of the first action. The defendants to the second action, by cross bills against the ferry company and against each other, set up their respective claims to the stock; and by stipulation the two actions were consolidated, and a joint decree entered in favor of Mrs. Adams, from which Hiram Mabury has appealed.

This suit arises out of a controversy between Nora Adams, one of the appellees, and Hiram Mabury, the appellant, regarding a one-twelfth interest in the Louisville & Jeffersonville Ferry Company, and the right to the issuance of 166⅔ shares of stock in said company, of the par value of $16,-666.66⅔, representing that interest. The company stands ready to issue this stock either to Nora Adams or to Hiram Mabury, as that right may be determined in this suit. It may be said, however, that Nora Adams claims the right to the stock independently of any claim or interest which Mabury may have in the ferry property. The first suit was brought by Nora Adams in 1888 against the company, in the circuit court of Clark county, Ind., to compel the company to issue the said shares of capital stock to her. That suit was removed by the company to the circuit court of the United States for

the district of Indiana. After that suit was removed, the ferry company began another suit in the same court against Hiram Mabury and Nora Adams, in the nature of a bill of interpleader, to determine the respective rights of the parties to the issuance of such stock. In that suit the defendants, by cross bills against the ferry company and against each other, set up their respective claims to the stock, and by stipulation the two suits were consolidated, and heard as one, and a decree entered in favor of Nora Adams, which determined that she was the owner of the disputed one-twelfth interest in the ferry company, and entitled to have the stock representing that interest issued to her; that Mabury had no right, title, or interest in or to said one-twelfth share; and that he be perpetually enjoined from asserting the same, by suit or otherwise, and adjudged to pay the costs of suit. The evidence is mainly documentary, and the facts undisputed. Those necessary to present the points at issue are substantially these:

In 1802 William Henry Harrison, then the governor of the Indiana territory, granted a ferry franchise to one Marston G. Clark. In 1815 Clark sold the franchise, and in 1822 it came into the hands of George White. At this time, White was in possession and operating another ferry, under an act of the Indiana legislature passed December, 1820, which recited that he was the assignee of the franchise theretofore granted to Samuel Merriweather. White, thus having the two ferries, in 1826, sold one undivided one-half to Charles Steade, who conveyed the same to Athanasius Wathen, and the other undivided half to Ephraim Gilmore, who conveyed the same to Charles Strader, John Shallcross, and James Thompson; so that at that time, and until 1835, the two ferries belonged, equally, one-half to Athanasius Wathen, and one-half to Shallcross, Strader, and Thompson. In 1807 Gov. Harrison had granted another ferry franchise to one Joseph Bowman, who ran the ferry down to 1837, leaving two brothers and two sisters as heirs. One of these sisters and one of the brothers sold their shares to A. Wathen. Another brother died, leaving nine children, each entitled to one thirty-sixth of the ferry franchise. Eight of the children sold their interest to A. Wathen, who married the other sister, Elizabeth Bowman Wathen (referred to in the case, generally, as Mrs. Elizabeth Wathen). The other brother sold his share to Shallcross, Strader, and Thompson. From 1837 the ferry was conducted by A. Wathen, as the owner of one half, and by Shallcross, Strader, and Thompson, as the owners of the other half. This A. Wathen, thereafter known as A. Wathen, Sr., died in 1851, leaving a widow, Elizabeth, and four children, James, Athanasius, George W., and A. J. Wathen. If the ferry franchise was real estate, it stood, upon the death of Athanasius Wathen, Sr., as follows: Shallcross, Strader, and Thompson, 12-24; Mrs. Elizabeth Wathen, dower for life, 4-24; James Wathen, 2-24; Athanasius Wathen, Jr., 2-24; George Wathen, 2-24; A. J. Wathen, 2-24. And there would be a reversionary interest of 1-24 in each of the four sons of Athanasius Wathen, Sr., to take effect upon the death of Mrs. Elizabeth Wathen, the widow. In 1857 George Wathen conveyed to Hiram Mabury all his interest in the ferry. This gave Mabury 2-24 in possession, in fee, and 1-24 in reversion, upon the death of Elizabeth Wathen. The deed is broad in its terms, and professes to grant, bargain, sell, and convey to Mabury, and to his heirs and assigns forever, all his right, title, interest, and claim in and to the ferry right, ferry landing, and steam ferryboats, together with all the appurtenances thereunto belonging. In 1859 A. J. Wathen also conveyed to Mabury all his interest in the ferry. These two deeds gave Mabury 4-24 in fee, and 2-24 in reversion. In 1858, by a sheriff's deed, all James Wathen's interest in the ferry was conveyed to Reed, Lewis & Howard, who conveyed the same to Thomas J. Howard. October 31, 1863, Howard conveyed the same interest to Mrs. Elizabeth Wathen, who thereupon, by virtue of this conveyance and her former interest, became entitled to the following interests in the ferry: For life, 3-24; in fee, 3-24. At this time the Wathens' half interest in the ferry stood as follows: Elizabeth Wathen: For life, 3-24; in fee, 3-24. Athanasius Wathen, Jr.: In fee, 2-24; in reversion, 1-24. H. Mabury: In fee, 4-24; in reversion, 2-24. In 1865 (March 11th) there was a conveyance of ferry interests to Pinkney Varble and others, in which Shallcross, Moses Brown, H. Mabury, Eliza-

beth Wathen, George Wathen, and James Wathen joined. In that deed is the following provision: "And it is also understood between the parties hereto that the four twenty-fourths of said premises hereby conveyed by the grantor Elizabeth Wathen, two twenty-fourths are the same which she acquired by purchase, heretofore held and owned by her son James Wathen, and the other two twenty-fourths conveyed by her is the one-half of an interest in which a question may arise as to the right of reversion or inheritance after her death. Now therefore, I, James Wathen, for the consideration of one dollar cash to me in hand paid, join in this conveyance, and sell and convey to said grantees herein all my right, title, and interest, in possession, remainder, or reversion, in or to the said four twenty-fourths of said ferry property, conveyed herein by my mother, said Elizabeth Wathen; and I, George Wathen, for the like consideration to me paid, do convey and quitclaim to said grantees said four twenty-fourths conveyed by my mother, Elizabeth Wathen. And said H. Mabury, party hereto, agrees and covenants to look to the two twenty-fourths not conveyed herein for his reversionary interest, as grantee of Andrew Wathen and George Wathen, and that in no event will he, by virtue of his purchase of the interest of said George and Andrew Wathen, claim any interest in the four twenty-fourths of said ferry property herein conveyed by said Elizabeth Wathen." The son Athanasius Wathen was non compos, and it appears by this deed that his mother undertook to convey his reversionary interest, and Mabury undertook to risk the claim of Athanasius Wathen to one of the two twenty-fourths still held by Elizabeth Wathen. This deed left Mrs. Wathen two twenty-fourths, being what remained of her life interest as widow; and Mabury undertook to look to those two shares so retained by Mrs. Wathen, for his reversionary interest as grantee of Andrew and George Wathen, by their previous conveyances to him. These, as will be seen hereafter, are the identical two twenty-fourths in controversy in this suit. On September 23, 1865, following, the claim of Athanasius Wathen, Jr., was conveyed to Sherley & Co. by William D. Beach, guardian of A. Wathen; and on October 17, 1865, Mrs. Wathen conveyed to her son, James Wathen, her remaining two twenty-fourths, in which she held a life interest.

Under date of March 29, 1865, a voluntary association was formed by the owners of the ferry, and an agreement signed by them. These articles of association were signed by John Shallcross, Moses Brown, Hiram Mabury, James Wathen, W. D. Beach (guardian of A. Wathen), J. A. Wathen, Sherley, Woodfolk & Co., John B. Smith, W. C. Hite, E. S. Hoffman, Pinkney Varble, Daniel G. Parr, and Howard Johnson. A provision of these articles which figures largely in this suit is as follows: "Article I. All the boats, appurtenances, and franchises having become the common property of said company, in proportion as herein set forth of their interest: John Shallcross, one-eighth (1-8th); Moses Brown, one-eighth (1-8th); Hiram Mabury, one-eighth (1-8th); James Wathen, one-twelfth (1-12th); A. Wathen, by Wm. D. Beach, guardian, one-twelfth (1-12th); Sherley, Woodfolk & Co., one-eighth (1-8th); J. B. Smith, one twenty-fourth, (1-24th); W. C. Hite, one-twenty-fourth (1-24th); E. S. Hoffman, one-twenty-fourth (1-24th); P. Varble, one-eighth (1-8th); Dan'l Parr, one twenty-fourth (1-24th); Howard Johnson, one twenty-fourth (1-24th)." In other words, the Wathen interest, by that agreement, stood as follows: Hiram Mabury, 3-24; James Wathen, 2-24; Athanasius Wathen, by his guardian, 2-24; making 7-24. As Mrs. Wathen had previously conveyed 4-24, and Hiram Mabury 1-24, the 7-24 named in the deed covered what remained of the original Wathen interest of 12-24. It will be seen that the articles do not name Elizabeth Wathen as the owner of any interest in the ferry at that date, though, according to the record, she had never parted with her life interest in the 2-24 of which Mabury held the reversionary interest after her death. And it is claimed by counsel for Mabury that the inference from this fact is that, when the association was formed, James Wathen had in some way arranged to acquire and represent this interest standing in his mother's name, and which she did in fact afterwards convey to him. On the other hand, it is claimed by Nora Adams' counsel that, as against Mabury, he is absolutely bound by the agreement, and es-

topped from showing that the interests stood at that time any otherwise than as set down in the articles. It is alleged in Mabury's cross bill, and admitted in Nora Adams' answer, that the so-called "articles of association," while dated 29th of March, 1865, were not in fact adopted until October 7, 1865, which is the date of the deed from Elizabeth Wathen to James Wathen. In 1867 James Wathen died, bequeathing all his estate to his widow, Nora Wathen. In 1869 the present corporation, the Louisville & Jeffersonville Ferry Company, was chartered by the legislature of Kentucky. Among other provisions of this charter were the following: "(7) Said corporation may purchase from any existing ferry companies or associations any ferry, boats, wharfs, and ferry franchises for any ferry or ferries between Louisville and Jeffersonville, and upon the purchase of all such existing franchises shall have the right to carry on and conduct a ferry or ferries between said cities. (8) Said corporation may accept such boats and franchises and wharfs and other property in payment of stock subscribed, and at such prices as may be agreed upon." The corporators met on the 24th of April, 1869, and after accepting this charter, and resolving to organize under it, passed the following resolution: "Resolved, that the president be, and is hereby, authorized and empowered to make and complete the purchases authorized by sections seven and eight of the charter of this company, by purchasing the franchises and boats, and all other property and rights, of the association known as the 'Jeffersonville Ferry Company,' at the price of two hundred thousand dollars, payable in the stock of this company at par." A meeting of the board of directors was held on the 11th of September, 1869, at which was passed the following resolution: "Resolved, that as fast as the title of each owner of an interest in the old ferry company is duly conveyed to this corporation, free of incumbrance, the stock to which such owner may be entitled in payment for such interest shall be issued to him. No fractional shares shall be issued, but certificates therefor shall be given; and, whenever a number of those certificates equaling or exceeding one full share shall be presented, stock shall be issued therefor to the amount of the share or shares embraced by one value of the certificates, and for any fraction over a new certificate shall issue." By deed dated the 6th of July, 1869, there was conveyed to this corporation various interests in this ferry franchise by divers parties; said deed, among other clauses, containing the following: "And Nora Wathen, in consideration of one hundred and sixty-six and two-thirds shares of the stock of Louisville and Jeffersonville Ferry Company to the said Nora Wathen assigned and transferred, does hereby grant, bargain, sell and convey to the said Louisville and Jeffersonville Ferry Company one equal and undivided twelfth part of all the franchises and other assets, real and personal, of the firm or association known as the 'Jeffersonville Ferry Company,' except the wreck of the steamer Wathen, and reclamations arising from the loss of said boat; to have and to hold to the said Louisville and Jeffersonville Ferry Company, in fee simple, forever." This deed was recorded in Jefferson county on the 15th of April, 1870, and in Clark county, Ind., some months subsequent thereto. By deed dated the 24th of September, 1869, Hiram Mabury conveyed his three twenty-fourths interest. This deed was recorded in Jefferson county on the 15th of April, 1870, and some months thereafter in Clark county. The following recital is contained in this deed of Hiram Mabury: "To have and to hold to said party of the second part, with covenant of general warranty, in fee simple, forever; but it is expressly understood and agreed that this conveyance in no wise affects the claim of said party of the first part to the reversion, after the death of Elizabeth Wathen, of two twenty-fourths of said ferry now held by Nora Wathen as assignee of said Elizabeth Wathen, and no part of the same is conveyed herein." There was another deed, dated September 15, 1869, from Jonas Howard, guardian of Athanasius Wathen, to the Louisville & Jeffersonville Ferry Company, and which was recorded on the 15th of April, 1870, in Jefferson county, and subsequently in Clark county, Ind., and which it is important to observe in this connection. The recital in that deed is as follows: "Whereas, the owners of a majority of the interest of the ferry franchises and real estate and other assets, real, personal, or mixed, which belong or appertain to the association or firm known as the 'Jeffersonville Ferry Company,' and now and for many years

engaged in running and operating a ferry between the cities of Louisville, Kentucky, and Jeffersonville, Indiana, having organized a company, under the recent act of the general assembly of the commonwealth of Kentucky known as the Louisville and Jeffersonville Ferry Company, for the purpose of enabling the several owners of the interests in said ferry franchises, etc., to transfer their several interests therein to said ferry company, and to receive back in lieu thereof an amount of stock of said company equal in value to the interest so conveyed by such owner; and whereas, Athanasius Wathen, a person of unsound mind, is the owner in fee of the undivided one-twelfth part of said ferry franchises, boats, tackle, docks, etc., of the estimated value of sixteen thousand six hundred and sixty-six and 66-100 dollars." It then goes on to transfer to the ferry company the undivided one-twelfth of the ferry franchises and real estate, and provides that the deed is not meant to include any right said Athanasius Wathen may have in reversion to the interest which descended to his mother, Elizabeth Wathen, for life, from one A. Wathen, deceased, in and to said ferry franchises, etc. On the 9th of October, 1869, the following proceedings were had at a meeting of the directors of the Louisville & Jeffersonville Ferry Company:

"Louisville, Ky., October 9, 1869.

"The board met, upon the call of the president, at the residence of Capt. Z. M. Sherley. Present: Z. M. Sherley, W. C. Hite, F. Leib, D. G. Parr, Howard Johnson. Capt. W. C. Hite offered the following resolution, which was adopted: 'Resolved, that the stock now in the name of Mrs. Nora Wathen shall not be issued to any one, but remain in the possession of the company until the matter of title is definitely settled.' On motion, the board adjourned.                                    H. H. Reynolds, Secretary."

It appears in evidence that in October, 1869, all of the stock of the Louisville & Jeffersonville Ferry Company, which, as above shown, consisted of 2,000 shares, of $100 each, was issued either in the form of share certificates, or in the form of scrip for fractions of shares, excepting 166⅔ shares. It further appears that these shares, which were reserved on account of the claim of Mrs. Nora Adams (then Mrs. Nora Wathen), had not been issued; and, although this occurred in 1869, the shares had not been issued until the decree in this cause. In the mean time, Mrs. Adams received the dividends upon this stock, and was allowed to vote; but no certificates, as we have above stated, were issued to her. In 1888 Athanasius Wathen, the unfortunate son of Mrs. Elizabeth Wathen, died, leaving no heir at law except his mother, and subsequently she died. After Mrs. Wathen's death, Mr. Mabury claimed that the stock should be issued to him, representing this one-twelfth interest, and Mrs. Adams claimed that it should be issued to her. The dividends, after that, were not paid to anybody, nor had the stock been issued to anybody; and this controversy is to determine to whom that stock belongs.

John Maynard Harlan, for appellant.

Humphrey & Davie, for Louisville & Jeffersonville Ferry Co.

M. Z. Stannard, for Nora Adams.

Before JENKINS, Circuit Judge, and BUNN and SEAMAN, District Judges.

BUNN, District Judge, after stating the case as above, delivered the opinion of the court.

It appears from the above undisputed statement of facts that Mrs. Nora Adams (formerly Mrs. James Wathen) claims under the will of her former husband, who, in turn, derived such title as he had from his mother, Mrs. Elizabeth Wathen, the wife and widow of Athanasius Wathen, Sr.; that Elizabeth Wathen, as widow, was entitled to a dower interest, which was at that time, under the laws of Indiana, where these parties lived, a life interest

for 1-3 in her husband's real estate; that dower interest was a life interest in 4-24 of the ferry; that she afterwards purchased from her son James Wathen 2-24 more in fee, and a remainder interest in 1-24, giving to her, in all, 3-24 in fee, and a life estate in 3-24. This is all on the assumption that the ferry property was real estate, as no doubt it was. Indeed, there has been but little contest on that question on the hearing, though from all that appears in the record it is more than probable that the uncertainty in regard to the title to this disputed 2-24 interest, suggested upon the death of Elizabeth Wathen, arose from doubt as to the character of the ferry property,— whether personal or real estate. When the controversy commenced, though this doubt concerning the character of the property became more and more settled, so that now it is admitted to be real estate, the parties naturally sought for other means to maintain their respective claims to this disputed interest. Mrs. Elizabeth Wathen, then being entitled to 3-24 in fee, and another 3-24 for life, undertook to convey in fee 4-24, which was one more than she possessed. This was by deed dated March 11, 1865, but not recorded until October 30, 1865. Why she undertook in that deed to convey in fee 1-24 more than she so held is not certain; probably because she relied upon procuring the reversionary interest in 1-24 from her non compos son, Athanasius. But, whatever the motive, the fact is patent on the record. Afterwards, she undertook to convey to James Wathen 2-24 in fee. But it is apparent that, at the time of this conveyance, she held a life interest, only, in those 2-24 which are the 2-24 in dispute here, and which Nora Adams (then Nora Wathen) received from her husband, James Wathen. So that we must conclude, from the record, that Nora Adams held only a life interest in this 2-24 which terminated upon the death of Elizabeth Wathen. It is likewise just as apparent from the record that Hiram Mabury purchased the reversionary interest in these same 2-24 from George and James Wathen, and thereby, upon the death of Elizabeth Wathen, became the owner in fee, and is entitled to assert his right and title thereto in this suit, unless estopped from so doing by some act or contract or transaction of his appearing in the record of the case. That he is so estopped or barred is one of the contentions put forth by Mrs. Adams, and which was supported by the finding and decree of the circuit court. We think the contention is not made good by the evidence, and that the finding and decree, in this respect, are erroneous. No estoppel was pleaded in the case, which doubtless should have been done if the appellee wished to avail herself of such a defense. But beyond this, upon careful consideration of all the conveyances and proofs, we are satisfied that no estoppel or bar to Mabury's claim has been shown.

Mabury has asserted his claim on almost every occasion, and the contest in regard to the title, upon Elizabeth Wathen's death, to this disputed 1-12 interest in the ferry, has been foreshadowed for a quarter of a century, and must have been well understood by Nora Adams, and all of the parties interested in the ferry property. In the deed of March 11, 1865, Mabury and Elizabeth Wathen are both party grantors. By this deed she conveyed 4-24, of which, it

was recited, 2-24 was the interest of James Wathen, which he had acquired by purchase, and the other 2-24 constituted "one-half of an interest in which a question might arise as to the right of inheritance or reversion after her death." In the deed of September 24, 1869, Mabury conveyed to the ferry company the 3-34 interest which he held in fee. This deed was recorded in Jefferson and Clark counties, Ind. It contains the following recital:

"To have and to hold to said party of the second part, with covenant of general warranty, in fee simple, forever; but it is expressly understood and agreed that this conveyance in no wise affects the claim of said party of the first part to the reversion, after the death of Elizabeth Wathen, of the two twenty-fourths of said ferry now held by Nora Wathen as assignee of said Elizabeth Wathen, and no part of the same is conveyed herein."

After the new incorporated company was organized, the board of directors met at Louisville, October 9, 1869, and passed this resolution:

"Resolved, that the stock now in the name of Mrs. Nora Wathen shall not be issued to any one, but remain in the possession of the company until the matter of title is definitely settled."

Nora Wathen (now Nora Adams) was then representing that stock, and receiving the dividends thereon, which state of things continued until the present controversy was precipitated by the death of Elizabeth Wathen, in the spring of 1888. During all this time, from 1869 when this resolution was passed, until the death of Elizabeth Wathen,—a period of 19 years,—Nora Wathen, while voting as a holder of stock, and receiving her dividends, made no demand on the company for the issuance of stock to her, nor did Mabury. Both waited until the death of Mrs. Elizabeth Wathen, and then both demanded the stock from the company.

It is evident from the testimony that the question of title to this one-twelfth interest, was well understood to be pending from 1865, four years before the present company was organized, down to the death of Elizabeth Wathen and the commencement of this suit. Mabury was claiming it, and Mrs. Adams was claiming it. The company, while allowing Mrs. Adams all the benefits of a stockholder during all this time, expressly resolved not to issue the stock to her, or to any one, until the question should be definitely settled. Mrs. Adams, as a member of the company, was bound to take notice of its proceedings, and must be considered as having acquiesced in this resolution and attitude of the company, by voting her stock, and receiving the dividends, for 19 years, without asking that the stock be issued to her. All the parties resided in the same town in Indiana, and all must have known of the resolution of the board of directors. This presumption is strong—almost conclusive—upon the members of the company, and, in Nora Adams' case, is strengthened by the fact that she has not denied under oath her knowledge of it, or her acquiescence in the action of the board. Indeed, she has not testified as a witness in her own behalf in the case. Her right during the life of Elizabeth Wathen was undoubted. The question was whether it continued after her death. There is no evidence that any claim was made, prior to the bringing of the suit

by Nora Adams, that Mabury had parted with his reversionary interest, or had done anything, in the previous conveyances and contracts, to estop him from claiming that interest, in case he ever held it by law.

The claim of estoppel arises out of the proper effect to be given to certain provisions in the conveyances and the articles of association to which Mabury was a party in 1865 and 1869: (1) The deed of March 11, 1865, in which he conveyed 1-24 of the ferry to Pinkney Varble and others. Elizabeth Wathen joined in this deed, and conveyed 4-24, of which it was recited that 2-24 was the interest of James Wathen, which she had acquired by purchase, and the other 2-24 constituted 1-2 of an interest in which a question might arise as to the right of inheritance or reversion, after her death. This left in her 2-24, to which Mabury covenanted to look for his reversionary interest as grantee of Andrew and George Wathen. (2) The articles of association, dated March 29, 1865, in which James Wathen is described as an owner in the ferry property, and as having contributed a 1-12 interest. (3) The deed of September 28, 1869, in which Mabury conveys to the new company his remaining 3-24 interest. This 3-24 interest he conveyed to the company in fee, in consideration of the issuing to him by the company of 250 shares of the capital stock. But in this deed he makes the express reservation that the conveyance is in no wise to affect his claim to the reversion, after the death of Elizabeth Wathen, of 2-24 of the ferry, then held by Nora Wathen as assignee of said Elizabeth Wathen, and that no part of the same was conveyed by that deed. It is claimed by counsel, and was held, as we understand, by the circuit court, that by the above-named deed of March 11, 1865, Mabury, in joining in the deed with Elizabeth Wathen, relinquished the reversionary interest which he had, if any, and that by the articles of association of March 29, 1865, he estopped himself from denying that James Wathen was the owner of 1-12 of the ferry. Did Mabury, in the deed of March 11, 1865, relinquish his reversionary interest? Upon careful inspection of all the provisions of that deed, we are satisfied that Mabury not only did not relinquish such reversionary interest, but, on the contrary, that these provisions negative any such intention, by showing that he was then endeavoring to protect his interest, and assert his title to this disputed share. It is nevertheless true that Elizabeth Wathen, by that deed, undertook to convey in fee 1-24 more than she then owned, but the reason for this seems apparent, from the deed itself, to be, that she was undertaking to convey the reversionary 1-24 interest of her non compos son, Athanasius Wathen. This seems apparent from the recital in the deed as follows:

"And said grantees have paid and are to pay to said grantors, for said property conveyed, as follows, wit: They have paid one-third of said purchase money, to wit, twenty-four thousand four hundred and forty-four 44⅑-100 dollars ($24,444.44⅑), cash in hand paid to said grantors, the receipt whereof is hereby acknowledged, and have executed to said grantors their promissory notes for the like sum of $24,444.44⅑, due and payable on the first day of May next, and also their promissory notes for the like sum of $24,444.44⅑, due and payable on the first day of August next, and all bearing interest from

the first day of February last, which notes are executed separately to said grantors according to the interest they severally convey and warrant by these presents, and the receipts of which notes is acknowledged by the said grantors in full, except only that, as to the part sold by Elizabeth Wathen, the price for one twenty-fourth share is $6,666.66⅔, is to be withheld, and no note executed therefore or payment made thereon, until she perfects title as to one share, in so far as her son Athanasius Wathen may have any reversionary interest therein; and when said reversionary interest, or whatever other interest of said Athanasius, in said interest conveyed and warranted by said Elizabeth Wathen, of the 4th part, shall be fully and lawfully conveyed to said grantees, then they are to pay said sum of $6,666.66⅔, or execute their note or notes therefor, according to the terms of payment above indicated, with interest thereon from the 1st day of February last."

This deed appears to be a carefully prepared instrument, its meaning tolerably plain, and little room left for construction. The provision above cited shows, with reasonable certainty, why it was that Elizabeth Wathen undertook to convey in fee one more share than she held in fee, and what that particular 1-24 was; and that she was not undertaking to convey the 2-24 share which is in dispute in this suit, in which she then held a life interest, and to which Mabury was claiming the right of reversion by conveyance from George and Andrew Wathen. Instead of waiving anything, Mabury was standing by, and protecting himself against the conveyance of his reversionary interest by protesting that it was not his intention to convey it. Mrs. Wathen conveyed the 2-24 in fee which she had acquired from James Wathen, and Mabury joined with her in conveying his reversionary interest of another 1-24. Adding to these the 1-24 interest of Athanasius Wathen, Jr., and we have the 4-24 which Mrs. Wathen undertook to convey, leaving still in her a life interest in the 2-24, in which Mabury was claiming the reversionary interest. We are unable to perceive anything in this deed, which is evidently drawn with care and precision, showing that Mabury relinquished his claim to the reversionary interest in this 1-12 of the ferry and franchises. It appears, on the contrary, that, so far from relinquishing, he asserted, his claim, with all proper assiduity. The covenant of Mabury to look to the remaining 2-24 held by Elizabeth Wathen to make good his reversionary interest was made with the grantees in that deed, and was for their benefit, and not that of the Wathens. If he had relinquished that reversionary interest, it would have inured to the benefit of his grantees. The deed, however, shows plainly that it was not intended to convey that interest, or to approve a conveyance of it by Mrs. Wathen, but that Mrs. Wathen meant to exclude from that conveyance the reversionary interests then held by Mabury under deeds from George and Andrew Wathen. The only other conveyance by Mabury was that of September 28, 1869, executed by himself and wife to the ferry company; and in that he expressly reserves the reversionary interest which he had all along claimed, and which the record shows he was entitled to claim, and properly describes it as being the interest then held by Nora Wathen, as assignee of Elizabeth Wathen. By that deed he conveyed to the ferry company, in fee, "three equal undivided twenty-fourth parts of the entire franchises, boats, tenements, hereditaments, and other assets," with this reservation:

"But it is expressly understood and agreed that this conveyance in no wise affects the claim of said party of the first part to the reversion, on the death of said Elizabeth Wathen, of two twenty-fourths of said ferry, now held by Nora Wathen as assignee of said Elizabeth Wathen, and no part of the same is conveyed herein."

But it is claimed by counsel, and was so held by the court below, that Mabury, in signing the articles of association, of March 29, 1865, which describes James Wathen as the owner of one-twelfth of the ferry, estopped himself from denying that James Wathen was in fact the owner in fee of said one-twelfth. We cannot concur in that conclusion, and, indeed, see but little ground for such a contention. Such supposed estoppel, to be successful, should rest upon good and solid foundation; but, when the circumstances are fully considered, there seems but slight ground on which to base an estoppel, in this case, which will cut off Mabury's right to assert a claim to which he was clearly entitled, and which he had, all along, comstantly and persistently made. There is no such claim made in the pleadings, and there is little ground for it. If Mrs. Adams relied upon it, she should have set it up. In these articles, dated 29th March, 1865, in the recital of the different interests which go to make up the ferry rights, Mabury is described as holding one-eighth, and James Wathen one-twelfth. But the articles in such recital did, no doubt, and might properly have described these shares according to their quantity or size, rather than according to their quality; that is to say, whether in fee, or for life only. Mabury held at this time the fee in one-eighth. He had a present right to represent that share. The other two twenty-fourths which he had all along claimed was a reversionary interest, merely, depending upon the life of Elizabeth Wathen, and gave him no then present right to represent it. Elizabeth Wathen, on the contrary, at that time, held the life interest in these shares, which gave her the right to be a member of the company, and to join in the articles of association. She, however, did not join in the articles, but her son did, and she afterwards conveyed to him her life interest in these shares; and it was, no doubt, in contemplation of this that James Wathen was named as a party, instead of his mother. It will be remembered that the deed of March 11, 1865, had already been executed, and was acknowledged by the grantors on March 13, 1865, and that Elizabeth Wathen then held the title to two twenty-fourths for life, while James Wathen had no interest at all. Why, then, should it be recited that he was the owner of a one-twelfth interest, and his mother not be mentioned at all in the articles, unless it was then understood that she was to convey to him that interest, which she did, in fact, the following October? Viewed in this light, the recital contained in the articles is entirely consistent with all the facts, as they now appear from the record. The association formed so soon afterwards was, no doubt, in contemplation at the time the deed was executed. In fact, the deed was not fully acknowledged and recorded until October 30, 1865,—after the date and acknowledgment of the deed from Elizabeth Wathen to James Wathen, conveying her life interest. The association did not go into effect until after James Wathen re-

ceived the conveyance from his mother, and it is a fair inference from all the circumstances that when the articles were signed, in March, 1865, it was understood that James Wathen was to have and represent the two twenty-fourths interest then standing in the name of Elizabeth Wathen. Considering the object to be accomplished, the situation of the parties, and the dates, times of acknowledgment, and recording of the different papers, it is quite evident that the deed of March 11, 1865, the articles of association of March 29, 1865, and the deed of Elizabeth to James Wathen, of October 17, 1865, are really contemporaneous documents, to be read and construed together; and, if this is done, it is quite evident there is nothing in the recital of the different interests contained in the articles of association that amounts to an estoppel against Mabury's claim. When the association was actually formed and went into effect, in the fall of 1865, James Wathen had acquired the two twenty-fourths interest recited as belonging to him, in the articles, from Elizabeth Wathen, which sufficiently explains why he was, and she was not, mentioned in the articles of association as a shareholder. It may be that, at the time the articles of association were executed, James Wathen understood that a conveyance to him by Elizabeth Wathen of her two twenty-fourths share, would give him that interest in fee; and from the conduct of Mabury, all the way through, he, no doubt, entertained a contrary opinion. But there is clearly no inconsistency in describing Wathen as the owner upon either theory; for whether he was to hold a life interest, or an interest in fee, he would still be an owner, and entitled to a share in the management of the association, and in the division of profits. In short, he would be a member and stockholder for all purposes, and might so continue during the life of the company. Besides, there is nothing to show that there was any guaranty on the part of any of the signers of the articles that they were the owners of the shares respectively credited to them in the recital, or in the conveyances which they severally made. They were probably named as owners in the articles because they had severally made conveyances of certain shares to the association, but they did not undertake each to warrant for the others. Sunderlin v. Struthers, 47 Pa. St. 411. Moreover, the articles were executed for the government of the ferry, and were not a conveyance, and do not profess to be a conveyance, at all. They were properly signed by those persons who were then presumably entitled to possession. They did not purport to settle any controversy as to title, though the signers well knew that there was one pending, or that might arise, in regard to this reversionary interest. At every step through all the transactions, Mabury asserted his right to the reversionary interest; and all parties, including the Wathens, had full notice of that claim. It would be a hardship, in these circumstances, to hold him estopped, if there is any other reasonable interpretation to be given to the document. No fraud is imputed to Mabury, and it does not appear that any person has been led to change his position, or have his rights or interests prejudiced, by any act of his. The disputed interest stands to-day as it did when the articles of association were formed, and when the deeds of

March 11, 1865, and September, 1869, were executed. Mabury is making the same claim now that he made then. He should be allowed to rely upon the simple truth and the justice of his claim, if not guilty of any fraud, and no one has been misled, to his prejudice, by Mabury's act. Certainly, the ferry company is in no position to claim an estoppel, as against Mabury, as it does not. It was not a party to the articles of association, which were executed four years before the company had any existence. The company is not holding through these articles, but under deeds direct from the owners in interest. It is not claimed that the company has been induced to accept the deed from Nora Wathen on account of these articles, or that it has in any way changed its position, or been misled, to its prejudice, on account thereof. If the ferry interest was real estate, as seems now to be conceded, Nora Adams' interest terminated upon the death of Elizabeth Wathen. Up to that time, for 19 years, she represented this interest, and received the dividends. She was a member of the company, enjoying all the privileges of a stockholder, though no certificate of stock was ever issued to her. Why has she not, then, already received all it was understood she was to receive, and all she was by law entitled to receive?

We have considered the question of estoppel upon the merits as though it had been regularly pleaded. We are satisfied that the appellee's contention is not sustained by the evidence. But Nora Adams has not invoked or claimed any estoppel, as against Mabury. This is something the court below has given her the benefit of without her asking. Neither in her original bill of complaint filed in the state court, nor in her cross bill in the suit brought in the United States court, does she claim any estoppel. She does not even refer to the articles of association of March 29, 1865, by virtue of which the estoppel is held by the court below to have arisen. An estoppel by contract, which this is said to be, is a species of estoppel in pais, and must be specially pleaded, or it cannot be relied upon. Bigelow, Estop. (5th Ed.) 455; Wood v. Ostram, 29 Ind. 179; Robbins v. Magee, 76 Ind. 390; Cole v. La Fontaine, 84 Ind. 448; Stewart v. Beck, 90 Ind. 458.

But Nora Adams does not make her claim against Mabury alone, but against the ferry company; and she insists, and the court below held, that she is entitled to the stock claimed by her, independently of any claim Mabury may have, and by virtue of her conveyance to the company, with others, of July 6, 1869. This claim is made by virtue of the following language contained in that deed:

"And Nora Wathen, in consideration of one hundred and sixty-six and two-thirds shares of the stock of Louisville and Jeffersonville Ferry Company to the said Nora Wathen assigned and transferred, does hereby grant, bargain, sell, and convey to the said Louisville and Jeffersonville Ferry Company one equal and undivided twelfth part of all the franchises and other assets, real and personal, of the firm or association known as the 'Jeffersonville Ferry Company,' except the wreck of the steamer Wathen, and reclamations arising from the loss of said boat; to have and to hold to the said Louisville and Jeffersonville Ferry Company, in fee simple, forever."

It is evident from what has already been seen that Nora Wathen, by this deed (conceding that the ferry property was real estate),

while really owning but a life interest derived from her husband, who in turn derived it from his mother, Elizabeth Wathen, undertook to convey to the company an estate in fee; and it is contended, and was so held, that the recital of the consideration received, being the transfer of 166⅔ shares of the stock, cannot be contradicted or explained, but that the company, though refusing to issue a certificate for the stock to her until the controversy in regard to the reversionary interest after Elizabeth Wathen's death should be determined, is bound now to issue the same to her, although that controversy should be determined against her, and in favor of Mabury. The result of such a contention, if made good, would be that, though Mabury is held to be entitled to hold that interest after Elizabeth Wathen's death, the company is still bound to issue the stock to Mrs. Adams, thus making a double liability on the part of the company for the same interest. It is evident the company cannot issue the stock to both, as that would be a gross fraud upon the other shareholders, and a double liability, in any other form, for the same interest, would result in the same sharp injustice; and the question is whether, the court, finding, as it must, that Mabury is entitled to claim the two twenty-fourths interest in the ferry property upon Mrs. Elizabeth Wathen's death, in 1888, must also find that the company is bound, by the recitals in the deed from Nora Wathen, to issue the stock to her. We are of opinion that such a conclusion is not only unnecessary, but would result in gross injustice. The company has shown itself ready and willing to convey the stock either to Mabury or to Mrs. Adams, as the court should decree, and that is all it can properly be made liable for. To hold the company for a still greater measure of liability, would be to contravene or ignore the understanding of the parties, and the facts and evidence in the case. We are of opinion that there is nothing in the deed from Nora Wathen inconsistent with the facts, as we know them from the record to be. Nora Wathen owned a life interest in these disputed shares. She might be held to own the fee. She wished to convey all the interest she had. She accordingly made a quitclaim deed of these shares, which was entirely sufficient to transfer whatever interest she had, or might be held to have, whether in fee, or only for life. If she should be adjudged to hold the fee, then the deed conveyed that interest, without the necessity of any further conveyance. If she held only a life interest, then the deed conveyed that. She had the then present right to represent that interest. How long it would last was uncertain. It did continue for 19 years, until the death of Elizabeth Wathen, in 1858. During all this time, she was as much a member of the company, and entitled to share in its proceedings and profits, as any other stockholder, and she did. She is presumed to know, and did know, of the action of the company in witholding the certificate of stock until the right to the reversionary interest should be settled; and she acquiesced in that action, and never demanded that the stock be issued to her. These things are quite consistent with the recital of the consideration in the deed, and there can be

no doubt of the propriety of showing just what that consideration was, and what the interest was which she must be held actually to have conveyed. There was no guarantee on the part of the company that she held title in perpetuity, as well as for life, to these shares. Though no certificate of stock was issued, she was recognized as the present owner by being allowed to draw her dividends. She might continue the owner as long as the company had an existence, but upon the death of Elizabeth Wathen, if the court should decide that her deed conveyed but a life interest, the stock might then go to the person entitled to it. The deed is a conveyance by Nora Adams, reciting a consideration already received. It does not profess to be an agreement on the part of the company to issue the shares of stock to her, but it recites that the deed is made in consideration of the said shares assigned and transferred to her. It is not an agreement to transfer and assign, but a recital of a transfer already made. But we know from the record just how they were assigned and transferred,—not absolutely, and for all time, but absolutely for the life of Elizabeth Wathen, and for her life, only, unless the pending controversy in regard to the reversionary interest to Mabury should be determined in Nora Adams' favor, and in that case she was to receive a final certificate, giving full title; and this is consistent with a proper and reasonable interpretation of the recital, and harmonizes with all the facts and circumstances attending the early history of this controversy. Certainly, the entire conduct of Nora Wathen, through so many years, in reference to the subject-matter, accords with, and is best explained by, this interpretation, and is inconsistent with the interpretation now asserted by her counsel. This is consistent with the general rule that the consideration of a deed may be inquired into, and shown to be different from the recital in the deed. You shall not defeat the deed by showing a want of consideration, but you may show what the consideration actually was. Welz v. Rhodius, 87 Ind. 5; Goodspeed v. Fuller, 46 Me. 141; Wilkinson v. Scott, 17 Mass. 249; Clapp v. Tirrell, 20 Pick. 247; Bowen v. Bell, 20 Johns. 338; Hall v. Hall, 8 N. H. 129; Meeker v. Meeker, 16 Conn. 387; Hayden v. Mentzer, 10 Serg. & R. 329. The court, in Goodspeed v. Fuller, supra, says: "The entire weight of authority tends to show that the acknowledgment of payment in a deed is open to unlimited explanation in every direction." Mrs. Nora Wathen, as well as her husband, from whom she derived title, knew all about the controversy over the reversionary interest in these shares. James Wathen, her husband, was a party to the deed with Mabury and Elizabeth Wathen, which contains the recital and reservation of this controversy. The record and circumstances show conclusively that all the parties knew about it, and of the action of the company in withholding the stock; and the recital of the consideration in Nora Wathen's deed to the company should be viewed in the light of all these facts, and, when so viewed, it is clear what is meant, and how it should be construed. It is clear to the court that these several deeds made by different owners at different times, but for a

common purpose, and all recorded at the same time, form part and parcel of one transaction, and should be read together. They all have the common purpose of organizing the new company with a capital stock of $200,000, to be taken at par by the owners of the different undivided interests in the ferry. It was never intended by any one that more than the $200,000 of stock should be issued. The controversy in regard to the final ownership in fee of the shares in question was purposely and studiously left in abeyance by the parties for the time being, and until it became of practical moment by the death of Elizabeth Wathen. Upon her death, in 1888, this controversy was precipitated. It became important then to know whether Mrs. Adams or Mabury held that interest. It made no difference with the company which party should make its title good to these shares. It stood ready, and is still ready, and willing, to issue the certificate to the rightful owner, as the court shall determine that right. But it would be grossly unjust, and contrary to the facts and the understanding of all the parties, to require the company to issue the stock to both; supposing that could be done, and an overissue decreed by the court. It would lessen the value of the stock of every member of the company.

There is but one other point in the case that we care to notice, and that only because some importance was given to it in the opinion of the court below. In the endeavor to show that Nora Adams had some interest in fee in the ferry property when she made the deed of July 8, 1869, aside from her life interest derived through her husband from Elizabeth Wathen, it is suggested that she also held an interest derived from her husband, James Wathen, which he held from his mother, Elizabeth Wathen, in what was known as the "Bowman Ferry,"—one of the three old ferries which were consolidated in the new one. It is perhaps sufficient to say in regard to this claim that it is not set up, nor relied upon, in the pleadings. Mrs. Adams evidently had no thought of advancing any such claim, or relying upon it in any way, nor did her counsel, when the pleadings were drawn. It seems to be an afterthought in support of the conveyance of an interest in fee, in case it should be held that the real interest in dispute was owned by Mabury, instead of Mrs. Adams, at the time of the execution of the deed. The pleadings admit that at the time of the death of Athanasius Wathen, Sr., one undivided half of the consolidated ferries belonged to Shallcross, Strader, and Thompson, and the other half to Athanasius Wathen, Sr.; and, if this be true, it must follow that before that date the small interest (whatever it was) inherited by Mrs. Elizabeth Wathen in the Bowman ferry was in some way conveyed to some of the other owners. The disposition of this fractional interest is not disclosed by the pleadings or the evidence, but, as no reliance is placed upon it in the pleadings, it forms a precarious foundation upon which to found a claim against the ferry company, after the real claim relied upon by the appellee to the disputed interest has failed.

Our conclusion is that Hiram Mabury is the owner in fee of the undivided one-twelfth interest in the ferry in dispute in the case, and

that Mrs. Nora Adams is entitled to take nothing in the premises; and, as the ferry company expresses a willingness to convey the 166⅔ shares of stock to the party who shall be declared to be the owner of such interest, the decree of the circuit court will be reversed, and the case remanded, with instructions to enter a decree in favor of Hiram Mabury,—that he be adjudged and decreed to be the owner in fee of the undivided two twenty-fourths interest in the ferry property and franchises in dispute in this case, and entitled to the possession, profits, and enjoyment thereof from the time of the death of Elizabeth Wathen; that upon his executing to the ferry company a good and sufficient warranty deed, in fee simple, of such two twenty-fourths interest in the ferry franchises and property, the ferry company convey to him the said 166⅔ shares of stock, representing that interest; that the said Nora Adams be adjudged and decreed to have no right, title, or interest in or to said two twenty-fourths of said ferry franchise and property, or to such stock, or to the funds in court, and that she be perpetually enjoined and restrained from asserting any claim thereto, by suit or otherwise, either against Hiram Mabury, his heirs, or assigns, or against the said ferry company; that the title of said Mabury and the ferry company be adjudged and decreed to be absolute, and free from any claim or demand, of any character whatsoever, of the said Nora Adams; that there be paid out of the fund deposited in the court below, being the dividends declared upon the said shares of stock decreed to the said Mabury, the costs of the said Louisville & Jeffersonville Ferry Company herein incurred, as well as the costs of removal of the case of Nora Adams against the Louisville & Jeffersonville Ferry Company from the Clark county circuit court of the state of Indiana, and that the residue of said fund be paid over to the said Hiram Mabury; and that the said Hiram Mabury recover from the said Nora Adams his costs herein expended, and also the costs of the Louisville & Jeffersonville Ferry Company so ordered to be paid out of the fund in court.