PENNSYLVANIA CO. v. COLE et al.

(Circuit Court, D. Indiana. October 10, 1904.)

No. 8,923.

1. EQUITY—ANSWER AS EVIDENCE—FACTS ALLEGED IN AVOIDANCE.

An answer in equity, although under oath, is not evidence for defendant, in so far as it sets up new facts by way of avoidance of the matters averred in the bill; but such allegations must be proved by evidence aliunde.

2. MUNICIPAL CORPORATIONS—ASSESSMENTS FOR SEWERS—PROCEDURE UNDER INDIANA STATUTE.

Under the Indiana statute authorizing cities and towns to make street improvements and sewers, and levy a special tax therefor on property benefited (Acts 1889, p. 237, c. 118, as amended by Acts 1891, p. 323, c. 118), which requires the council of a city to declare by resolution the necessity for the improvement, designate its kind and location, and publish notice of the time and place of hearing objections from property owners, as such statute has been construed by the Supreme Court of the state, which construction is binding on a federal court, such declaratory resolution is not jurisdictional, and the necessity for the improvement may be declared and an order therefor made in the same resolution, where, as required, notice is given and a hearing had before final assessments are made.

3. SAME—LEGALITY OF CONTRACT—NOTICE OF RECEIVING BIDS.

Where the council of a city is required by law to give notice by publication of time when bids for public improvement work will be received, the adoption of a resolution directing the engineer to give notice that sealed bids for sewer construction will be received and considered "on the ——— day of ———, 189–," does not confer on the engineer authority to fix the date; and, unless such authority appears elsewhere from the records of the council, his action in so doing is unwarranted, and no legal contract can be based on a notice so given by him.

4. SAME—POWERS OF COUNCIL—ADJOURNMENT BY LESS THAN QUORUM.

Where it is provided by statute that a majority of the members composing the common council of a city shall constitute a quorum, less than a quorum have no power to adjourn a regular meeting of the council to a later date, and a contract entered into at such an adjourned meeting is void, and cannot be validated by way of ratification by an approval of the minutes of such meetings at the next regular meeting.

5. SAME—SEWER ASSESSMENTS—STATING NAME OF PROPERTY OWNER.

Under the Indiana statute (Acts 1889, p. 237, c. 118, as amended by Acts 1891, p. 323, c. 118), which requires the council of a city, where a sewer has been constructed, before making a special assessment for the cost thereof, to cause a report to be made by the city engineer, which shall contain, among other things, "a description of each lot or parcel of lot benefited thereby, together with the owner's name," an assessment is invalid unless the description and the name of the owner are so reported; and a statement of an owner's name as "P., Ft. W. & C. Railway Co." is not sufficient to sustain an assessment against property owned by the Pittsburg, Ft. Wayne & Chicago Railway Company.

6. SAME—DESCRIPTION OF PROPERTY.

A description of property in proceedings for the assessment of a special tax thereon for street improvements must be such as would enable the officers to make a valid conveyance of the property in case of its sale.

¶ 1. See Equity, vol. 19, Cent. Dig. § 699.

Evidence aliunde cannot be resorted to for the purpose of rendering the description certain, nor can it be reformed as in case of a private contract or conveyance.

7. SAME—LAW GOVERNING—INDIANA STATUTE.
Act Ind. March 4, 1893 (Acts 1893, p. 332, c. 149; Burns' Ann. St. 1901, § 4274), relating to the assessment by cities of special taxes for sewer construction, applies only to sewers ordered and constructed after its passage and taking effect.

8. SAME—ACTION OF COUNCIL PENDING SUIT TO ENJOIN COLLECTION OF TAX.
Proceedings by a city council for the construction of a sewer and the assessment of the cost thereof on property benefited, which are void for irregularities affecting the jurisdiction to make the assessment, cannot be validated by any action of the council taken after the final estimate of benefits and the assessment have been completed, and pending a suit to enjoin the collection of the tax by a property owner, so as to affect the rights of the complainant therein.

9. SAME—ESTOPPEL OF PROPERTY OWNER.
Where property assessed for the cost of a sewer did not abut on the street in which the sewer was located, but was 700 feet distant from such sewer at the nearest point, and no notice of an intention to assess such property therefor was given until after the work had been completed, the owner is not estopped to challenge the validity of the proceedings by suit because of his failure to sooner object; nor can he be so estopped when the proceedings were void.

10. ESTOPPEL—NECESSITY OF PLEADING.
The defense of estoppel is not available in a federal court of equity, unless specially pleaded.

In Equity. Suit for injunction and to quiet title. On final hearing.

Zollars & Worden, for complainant.

S. R. Alden and W. H. Shambaugh, for defendants.

ANDERSON, District Judge. On October 23, 1893, the Pennsylvania Company, complainant, filed its bill, and on February 11, 1896, its amended bill, against Frank E. Cole and the city of Ft. Wayne, defendants, to restrain and enjoin the defendants from enforcing or attempting to enforce, by suit, foreclosure, precept, or in any other manner, certain assessments for sewer improvements, which assessments are alleged to be illegal and void, as against three tracts of land described in the amended complaint, and praying, also, that the title of the complainant to the said three tracts of land be quieted, as against all claims by the defendants arising from said assessments, and that the cloud on complainant's title thereby created be removed. To this amended bill the defendants filed answers, to parts of which the exceptions of the complainant were by this court sustained. Thereupon amended answers were filed, and, after replication, the evidence was taken, and the cause is now submitted on final hearing.

The facts material to be considered are substantially these:

On the 12th day of July, 1892, three resolutions were introduced into the common council of the city of Ft. Wayne for the construction of three sewers, one connecting with the other, and constituting, when completed, a continuous sewer; the three parts of said sewer being, respectively, four, five, and six feet in diameter. The assessments for

the construction of the six-foot sewer are the ones in controversy here. The resolution for the construction of the six-foot sewer is in these words and figures:

"Be it resolved by the common council of the city of Fort Wayne (two-thirds of all the members thereof concurring), that a 6-foot double-ring brick sewer with the necessary manholes, catch basins, and connections, be constructed on the following streets and alleys, commencing at the brick sewer in the alley between Glasgow avenue & Wabash ave., thence south along said alley to Randall st., thence west on Randall st. to Grant ave., thence south on Grant ave. to Alliger st., thence south on Alliger st. to Eliza st., thence west on Eliza st. to Walton ave., thence south on Walton ave. to Hayden st., thence west on Hayden st. to Winter st., thence south on Winter st. to the south line of the right of way of the Wabash Railway; and be it further

"Resolved (this council hereby declaring such improvement necessary), that the cost and expenses thereof, including services of inspector and expenses of advertising, except so much as is occupied by the crossings of streets and alleys, be assessed against and collected from the owners of lots and lands benefited thereby, according to the provisions of chapter 118 of the Acts of the General Assembly of the state of Indiana, approved March 8th, 1889, and all other laws supplemental thereto, and that said improvement shall be made under the supervision and to the satisfaction of the city civil engineer and the common council, and in accordance with the plans and specifications on file at the office of said engineer; and be it further

"Resolved, that the city civil engineer set the proper stakes, and advertise for three weeks, in the Fort Wayne Daily Sentinel, that sealed proposals will be received by this council, at a meeting to be held on the ——— day of ———, 189–, for the execution of said work.

                              "Paul E. Wolf, Councilman from 8th Ward."

The Pittsburg, Ft. Wayne & Chicago Railway Company was then and has since remained the owner in fee, and the Pennsylvania Company the lessee under a lease for 999 years, of the three tracts of land described in the amended complaint, and against which the assessments for the construction of said six-foot sewer are attempted to be levied and enforced. Under the terms of said lease the Pennsylvania Company assumed and agreed to pay all claims of every sort, including all taxes and assessments that might be levied or in any wise assessed against the property of said Pittsburg, Ft. Wayne & Chicago Railway Company.

The three resolutions for the construction of the four, five, and six foot sewers were, on said 12th day of July, 1892, referred to a special committee of the common council, which reported to the council on July 25th that, if the sewer should be constructed, it should be on the route described in the resolution. On August 23, 1892, the common council passed a resolution appointing a special committee to meet on the 26th day of September to hear objections to any and all improvements ordered by the common council, that the committee report such objections to the common council, and that the clerk cause notice to the property owners to be given in the Ft. Wayne Daily Sentinel as by law directed. The city clerk caused a notice to property owners to be published in the Ft. Wayne Daily Sentinel, a newspaper of general circulation published in Ft. Wayne, on the 2d, 9th, and 16th days of September, 1892, which is in these words:

"Notice.

"To owners of property abutting

"Upon Superior street from Barr street to Calhoun street.

"Upon the following streets and alleys, commencing at the brick sewer in the alley between Glasgow avenue and Wabash avenue, thence south along said alley to Randall street, then west on Randall street to Grant avenue, thence south on Grant avenue to Alliger street, thence south on Alliger street to Eliza street, thence west on Eliza street to Walton avenue, thence south on Walton avenue to Hayden street, thence west on Hayden street to Winter street, thence south on Winter street to the south line of the right of way of the Wabash Railroad.

"Upon Winter street from the south line of the right of way of the Wabash Railroad to Pontiac street.

"Upon Pontiac street from Winter street to Lafayette street:

"You and each of you are hereby notified that the common council has by resolution declared a necessity to exist for the said improvements in the manner and form hereinafter stated.

"And for the purpose of giving you and each of you and all others interested therein an opportunity to be heard and make any and all objections you may desire as to the necessity for the making and construction of said improvement, the common council has ordered a meeting of the special committee thereof to be held in the city civil engineer's office in the city of Ft. Wayne on September 26, 1892, at 7:30 o'clock p. m., to hear your said objections and report the same to the common council, of which you will all take due notice.

"The nature and character of each particular improvement is as follows:

"The gutters on both sides of Superior street from the west line of Barr street to the east line of Calhoun street to be graded and paved with vitrified brick to a width of 4 feet.

"A 6-foot double-ring brick sewer, with the necessary manholes, catch basins, and connections, be constructed on the following streets and alley: Commencing at the brick sewer in the alley between Glasgow avenue and Wabash avenue, thence south along said alley to Randall street, thence west on Randall street to Grant avenue, thence south on Grant avenue to Alliger street, thence south on Alliger street to Eliza street, thence west on Eliza street to Walton avenue, thence south on Walton avenue to Hayden street, thence west on Hayden street to Winter street, thence south on Winter street to the south line of the right of way of the Wabash Railroad.

"A 5-foot double-ring brick sewer, with the necessary manholes, catch basins, and connections, be constructed on Winter street from the south line of the right of way of the Wabash Railroad to Pontiac street.

"A 4-foot double-ring brick sewer, with the necessary manholes, catch basins, and connections, be constructed on Pontiac street from Winter street to Lafayette street.

"By order of the common council.        Rudy C. Reinewald, City Clerk."

The business of the regular meeting of the council on August 23, 1892, being voluminous, by unanimous action of the members of said body the unfinished business was postponed until August 30, 1892, and a recess taken until the evening of August 30, 1892, when the resolution for the construction of the six-foot sewer, introduced July 12th, was, with others, passed by the council.

It is contended by complainant in its amended bill that, the resolution ordering the clerk to give the above notice having been passed on August 23d, before the passage on August 30th of the resolution for the construction of the sewer, both the resolution of August 23d and the notice given pursuant thereto are void as to complainant, and that no notice of any sort was therefore given to complainant, nor to said Pittsburg, Ft. Wayne & Chicago Railway Company, in any manner or form, at any time, or by any one with authority to give such notice.

On the 26th day of September, 1892, the Pittsburg, Ft. Wayne & Chicago Railway Company appeared before the committee named in said notice by its counsel, and objected to the construction of the sewer upon the line proposed; but the Pennsylvania Company did not appear before said committee. Said special committee presented its report at the regular session of the council held September 27, 1892, reciting that a remonstrance signed by 39 property owners objected to the route of said sewer, and that the Pittsburg, Ft. Wayne & Chicago Railroad objected to the said route also, and the report concludes as follows:

"We believe the route set forth in the resolutions passed by the common council to be the most practical and the most advantageous to all concerned, and here recommend that the sewer be constructed upon the route in the manner provided in the said resolutions."

The report of the special committee was concurred in at the meeting of September 27, 1892. Without other authority or direction from the common council than such as contained in the resolution directing the construction of said sewer, the city civil engineer advertised for bids for the construction of the sewer described in said resolution, stating therein that bids would be received at the council chamber until the 25th day of October, 1892. On the 25th of October, 1892, the defendant Frank E. Cole filed his bid, which was referred by said common council to a special committee, to be reported upon at the next regular meeting of the common council, which was to convene, under the law, on the 8th day of November, 1892. There were but 8 of the councilmen present at said regular meeting of November 8, 1892; that number being less than a quorum, the council consisting of 20 members, representing the 10 wards into which the city was at that time divided. The record of the proceedings of the common council introduced in evidence shows that the common council met in regular session November 8, 1892; that 8 members of the council were present, naming them, and that 12 councilmen were absent, naming them; and that, "there being no quorum present, a recess was taken until Wednesday evening, November 9, 1892, at 7:30 o'clock." The record of the meeting on the 9th of November recites that the council met in regular session, present 14 councilmen, naming them, and absent 6 councilmen, naming them. With other business, the report of the special committee appointed to examine the bids reported that they had awarded the contract to the defendant Frank E. Cole, he being the lowest and best bidder, which report was concurred in. The contract was submitted, and on motion accepted, and the bond approved. At the next regular session of said common council, on November 22, 1892, there being present 18 councilmen, the two absentees being Councilmen Kelker and Wolf, who were present at the meeting on November 9, 1892, the record of November 8, and 9, 1892, was presented to and considered by said common council, and unanimously approved by it, signed by the mayor, and attested by the city clerk in open council. The assessments in question in this case are based upon the contract with Cole so made.

It is the contention of complainant that the assessments in question are void for the reason that the common council was not in legal session when the contract with the defendant Cole was entered into. An ex-

ception to that part of defendant's answer, embodying substantially the facts shown by the record, was sustained by this court. The amended answer is not substantially different, except that it contains the averment that:

"Said body took a recess until the following evening at 7 o'clock, and caused each of the absent members thereof to be notified of such action, and that the business for that regular meeting would be transacted and disposed of at the following evening at such adjourned meeting."

Upon the contract so made the defendant Cole constructed the sewer, and on the 27th day of June, 1893, the city civil engineer having reported a final estimate in favor of the defendant Cole for the construction of said sewer, the common council passed a resolution authorizing the mayor to appoint a special committee of five members of the common council to make an estimate of the lots and lands benefited by the construction of said sewer, and pursuant thereto the committee was appointed and reported their apportionment of assessment of benefits at a meeting of the common council held July 25, 1893, which report was concurred in. At the meeting of said council on July 25, 1893, the following resolution was adopted:

"Resolved. that the city clerk give two weeks' notice in the Ft. Wayne Daily Journal that on the 21st day of August, 1893, at 7:30 o'clock p. m., at the office of the city civil engineer, a special committee of said council, appointed for the purpose of giving a hearing on the report of the city civil engineer heretofore ordered for the purpose of making a final estimate and assessment for the construction of a 6-foot brick sewer, commencing at the Glasgow avenue sewer in the alley between Glasgow avenue and Wabash avenue, thence on Randall avenue, Grant avenue, Alliger street, Eliza street, Walton avenue, Hayden street, Winter street, and terminating at the south line of the Wabash Railroad, made and completed by F. E. Cole, contractor, will at said time and place hear all objections to said reports and accord a hearing thereon."

Pursuant to said resolution the city clerk caused to be published in the Ft. Wayne Daily Journal on the 2d, 9th, and 16th days of August, 1893, a notice of which (except the names of some of the property owners and the descriptions of the route of the sewer) the following is a copy:

"City Advertisement.

"Office of the City Clerk, City Building,

"Fort Wayne, Ind., Aug. 1, 1893.

"Notice to Pittsburg, Fort Wayne & Chicago R'y Co., Owners of Property Commencing at [describing the route]:

"You and each of you are hereby notified that the common council of the city of Fort Wayne, at a regular session held on the 25th day of July, 1893, found and determined that F. E. Cole, had made and completed the 6-foot brick sewer commencing at [describing the route], and at the same time required the city engineer to file his report concerning said improvement as required by law; and now then you and each of you are hereby notified that all persons feeling aggrieved by such report have the right to appear before the special committee of said common council appointed for that purpose on the 21st day of August, 1893, at 7:30 o'clock p. m., at the City Hall, which committee will hear any and all suggestions, complaints, or objections made or offered to said report.          Rudy C. Reinewald, City Clerk."

Said special committee met pursuant to said resolution and notice on August 21, 1893, and heard all objections as to said estimate, and on the

132 F.—43

following evening, at a regular session of the common council held August 22, 1893, presented the following report, which was concurred in by said council:

"Report of Special Committee.

"We, your committee on sewers, city civil engineer, and city attorney, to whom was referred the estimate in favor of F. E. Cole, for constructing a 6-foot double-ring brick sewer commencing [describing the route], report that we examined said estimate; that we met at the time and place of which due notice had been given; that we found said estimate just, true, and legal. Mr. Gocke and others objected to their assessment as being too high, but your committee thinks the objections are not well taken, and we recommend that said estimate be allowed."

That part of said estimate so made embodying the assessments in controversy, and containing the description and the owner's name of the lands in controversy so assessed, is in these words and figures:

| Owner's Name. | Description. | Total. Dolls. Cts. |
|---|---|---|
| P. Ft. W. & C. Railway Co. | Part of W ½ of E ½ of N. E. ¼ Section 12 Town 30 N. Range 12 East between the P. Ft. W. & C. and Wabash Railroads and known as "The Stock Yards. | 2850 00 |
| Do     Do | Space south of right of way and W. of Walton Ave | 226 00 |
| Do     Do | Right of way between Gay Street and Walton Ave. | 1500 00 |

The assessments so made, amounting to $4,576, became an apparent lien on complainant's property at the date of the confirmation of said assessment, viz., on August 22, 1893. That amount bore interest at the rate of 6 per cent. from that date until paid. On October 9, 1893, without recognizing the validity, regularity, or justness of said assessments and interest against the said land, or the right of either of the defendants to enforce collection thereof, and without waiving any defenses by complainant or the Pittsburg, Ft. Wayne & Chicago Railway Company, but simply to avoid the charge of standing in the way of improvements, or being unwilling to contribute thereto, the complainant paid to the contractor, Cole, defendant herein, the sum of $2,590, leaving due and unpaid of principal the sum of $2,021.08. On October 23, 1893, the original bill in this cause was filed.

The statute involved in this case is Act March 8, 1889 (Acts 1889, p. 237, c. 118), as amended by Act March 6, 1891 (Acts 1891, p. 323, c. 118). The several provisions thereof pertinent to this controversy are as follows:

"Sec. 2. Whenever cities or incorporated towns subject to the provisions of this act shall deem it necessary to construct any sewer, or make any of the alley or street improvements in this act mentioned, the council or board of trustees shall declare by resolution the necessity therefor, and shall state the kind, size, location, and designate the terminal points thereof, and notice for ten days of the passage of such resolution shall be given for two weeks in some newspaper of general circulation published in such city or incor-

porated town, if any there be, and if there be not such paper, then in some such paper printed and published in the county in which such city or incorporated town is located. Said notices shall state the time and place, when and where the property owners along the line of said proposed improvement can make objections to the necessity for the construction thereof.

"Sec. 3. In all contracts specified in the preceding section * * * the costs of any such sewer shall be apportioned among the lands, lots and parts of lots, benefited thereby, and according to such benefits without regard to the assessment for taxation of such property, and the city or incorporated town shall be liable to the contractor for the contract price for said improvement, and the owners ☾ ☾ ☾ of lots or parts of lots benefited by the construction of such sewer shall be liable to the city for their proportion of the costs in the ratio of the front line of their lots owned by them to the whole improved line for street and alley improvements, and for the construction of such sewer for the benefit of such lots or parts of lots thereby, and the city or incorporated town shall have a lien upon such lots or parts of lots, respectively, from the time such improvement is ordered, for such costs of improvement, collectible as hereinafter provided. ☾ ☾ ☾ Such assessments, with the interest accruing thereon, shall be a lien upon the property so assessed and shall remain a lien until fully paid and shall have precedence over all other liens, excepting taxes, and shall not be divested by any judicial sale. ☾ ☾ ☾ Any mistake in the description of the property or in the name of the owner shall not vitiate the lien of such assessment. * * *"

"Sec. 5. When any such contract shall be made ☾ ☾ ☾ the common council of such city * * * shall have power to cause estimates to be made from time to time of the amount of work done by the contractor, and to cause the same to be paid out of the treasury, deducting a reasonable amount or percentage to secure the completion of the contract, until the whole shall be finished, and to prescribe the time in which the whole shall be completed, and such estimates shall be a lien upon the several parcels of ground upon which they are assessed to the same extent that taxes are a lien, and shall have the same preferences over other demands, and such liens shall be in favor of the city or incorporated town, and the owner of the certificate or bonds hereinafter mentioned to secure to the city or incorporated town and such owners the reimbursement for such cost of improvement hereinafter provided for. * * *

"Sec. 6. When any such improvement has been made and completed, according to the terms of the contract made therefor, the common council of such city ☾ ☾ ☾ shall cause a final estimate of the total cost thereof to be made by the city * * ☾ engineer, and the common council of such city * * * shall require said city ☾ * * engineer to report to the common council of such city ☾ ☾ * the following facts touching said improvement:

"First. The total cost of said improvement.

\*     \*     ☾     \*     \*     \*     \*     \*

"Seventh. In the case of the construction of a sewer, a description of each lot or parcel of lot benefited thereby, together with the owner's name and the fair proportion of the cost of such sewer, according to the benefits conferred thereby that should be assessed against such lot or part of a lot.

"Sec. 7. Upon the filing of the report provided for in the last preceding section, the common council of such city * * ☾ shall give two weeks' notice in a newspaper printed and published in such city * * * of the time and place when and where a hearing can be had upon such report, before a committee to be appointed to consider such reports, and such committee shall make report to the common council of such city ☾* * * recommending the adoption or alteration of such report, and the common council of such city ☾ * may adopt, alter or amend such report and the assessments therein. Any person feeling aggrieved by such report shall have the right to appear before such committees and the common council of such city ☾ * * and make objection thereto, and shall be accorded a hearing thereon, and the common council of such city ☾ * * shall assess against the several lots 'r parcels of ground the several amounts which shall be assessed for and on account of such improvement, which said amounts shall bear interest at the rate of six per cent. per annum from the time of the finding of the completion

of said improvement by the common council * * * as mentioned in section 6 of this act. * * *"

Counsel for defendants in their brief have relied upon the averments of their answer pleading matter in avoidance as evidence, and have insisted that some parts thereof shall be taken as proved because no evidence was introduced by complainant controverting such pleading. The bill in this case does not waive answer under oath, and the answers were duly verified, to which a replication was filed. The verified answer, however, is not evidence for the defendant, in so far as it sets up new facts by way of discharge or avoidance of the matter averred in the bill. The rule is thus stated by Bates:

"When an answer is put in issue, what is confessed and admitted by it need not be proved; but where the defendant admits a fact, and insists upon a distinct fact by way of avoidance, he must prove the fact so insisted on in defense. This has been fully recognized by the United States Supreme Court as the correct rule. So far as an answer in equity sets up new facts by way of discharge or avoidance of the matter of the bill, or alleges separate and independent agreements, it is not evidence for the defendant; but all such allegations must be substantiated by proof aliunde." Bates, Federal Equity Procedure, § 324; Mitford & Tyler's Pl. & Pr. in Equity, p. 461.

It is contended by complainant that the whole proceeding is void for the reason that the common council did not, before passing the resolution ordering the sewer to be constructed, pass a resolution declaring the necessity therefor, and give notice of a time and place to be heard upon that question. The construction placed by the Supreme Court of Indiana upon the statute involved in this proceeding is binding upon this court. Forsythe v. Hammond, 166 U. S. 506, 518, 17 Sup. Ct. 665, 41 L. Ed. 1095, and cases there cited; Schaefer v. Werling, 188 U. S. 516, 23 Sup. Ct. 449, 47 L. Ed. 570. In Barber Co. v. Edgerton, 125 Ind. 455, 25 N. E. 436, it is held that the necessity for making an improvement, and an order for the improvement, may be declared in the same resolution. It has also been held that the adoption of a resolution declaring the necessity for the improvement is not necessary to confer jurisdiction on the municipal authorities, when the property owner is notified and a hearing is had before making final assessments. Hughes v. Parker, 148 Ind. 692, 48 N. E. 243; Pittsburg, etc., Ry. Co. v. Hays, 17 Ind. App. 261, 44 N. E. 375, 45 N. E. 675, 46 N. E. 597.

If, as decided by the Supreme Court of Indiana, the adoption of the declaratory resolution is not jurisdictional, where notice and hearing are provided for before making final assessments, and if the declaratory resolution and order for the improvement may be embodied in one resolution, it follows that complainant's contention that it should first be given notice and accorded a hearing upon the question of the necessity of the work, before the construction was ordered, is untenable. As said in Garvin v. Daussman, 114 Ind. 429, 16 N. E. 826, 5 Am. St. Rep. 637:

"The principle which underlies and upholds special assessments, such as that involved in the present case, is that the lands assessed are enhanced in value to an amount equal to the cost of the improvement, which is to be apportioned along those specially benefited in the manner prescribed by law. * * * It is essential to the public good that the necessity for street and other public improvements, and the cost of making them, and such other proceedings as are necessary to insure the prompt execution of the work, be determined and taken in a comparatively summary way. * * * If, there-

fore, the law provides for giving notice and for a method whereby the property owner may ultimately challenge the correctness of the assessment made against his property, in respect to whether it was made in good faith, without intervening mistake or error, and according to the method and under the safeguards provided by the law, the constitutional provision is deemed to be satisfied."

It is next contended that the contract with the defendant Cole and the proceedings under it are void because no valid notice for bids was given. In the resolution declaring the necessity for and ordering the construction of the sewer, it was resolved:

"That the city civil engineer set the proper stakes, and advertise for three weeks in the Ft. Wayne Daily Sentinel that sealed proposals will be received by this council at a meeting to be held on the ——— day of ———, 189-, for the execution of said work."

The bill charged that without authority or direction from the common council the city civil engineer advertised that bids would be received on the 25th day of October, 1892. The answer, to which complainant's exception was sustained, pleaded that the council "directed the city civil engineer to advertise for three weeks for sealed proposals for said bids for the construction thereof as shown by a copy of the resolution" as above set out, showing the date left blank. The amended answer pleaded a custom under which the engineer, instead of the council, fixed the date for receiving bids for street and sewer improvements. There is no evidence in the record tending to prove the existence of such a custom; and, if there was, it may be remarked such a custom could not excuse the council from the performance of a duty by law imposed upon it. The council undoubtedly had power to delegate to the engineer the duty of advertising for bids, but it was the duty of the council to fix the date, or to authorize the engineer to fix the date, and to sustain the power of the engineer to fill in the date fixed for the reception of bids there must be disclosed some corporate action on the part of the council authorizing it. The common council speaks by its records. In Byer v. Town of New Castle, 124 Ind. 86, 24 N. E. 578, it is held that:

"The only competent evidence of any act or proceeding of a municipal body, upon which the members of the corporate body are required to vote, is the record of the proceedings."

See, also, State ex rel. Renner v. Curry, 134 Ind. 133, 137, 33 N. E. 685.

The record in this case does not disclose such authority. The advertisement was invalid for this reason, and, being invalid, no legal contract can be based upon it.

It is next contended that the assessments in question are void for the reason that the common council was not in legal session when the contract with the defendant Cole was entered into. An exception to that part of defendant's answer, embodying substantially the facts in this regard shown by the record, was sustained by this court. The amended answer is not substantially different, except that it contains the averment that:

"Said body took a recess until the following evening at 7 o'clock, and caused each of the absent members thereof to be notified of such action, and that the

business for that regular meeting would be transacted and disposed of at the following evening at such adjourned meeting."

The evidence does not sustain the allegation of notice to each of the absent members, but whether such notice was in fact given is, in the opinion of the court, immaterial. The question is presented, then, whether less than a quorum of the common council of a city, authorized by law to act when a quorum is present, may adjourn to meet on the following day? The regular meeting was held November 8, 1892. The council consisted of 20 members, and only 8 were present. The minutes recite that, there being no quorum present, a recess was taken until the following evening, when the contract with Cole was made; 14 of the 20 councilmen being then present. The statute prescribing stated and special meetings, and the number necessary to act, is as follows:

"The common council shall hold stated meetings at least twice in each month; and the mayor or any five councilmen may call special meetings. A majority of all members to which the wards are entitled shall be a quorum, and the minutes of every such meeting shall be kept by the city clerk, which shall be open to public inspection." Section 3532, Burns' Ann. St. 1901.

It is not claimed by defendants that by reason of notice to the absent members the meeting on the 9th of November was a special meeting. The record of the meeting of November 9th, which is the best evidence, recites that the council met in "regular" session, while the record of the meeting on the 8th recites that "a recess was taken" until the following evening.

It is usual, in the by-laws of private corporations, following the provision specifying what number shall constitute a quorum, to provide that less than a quorum may adjourn from time to time until a quorum shall be present. That power for less than a quorum to act by way of adjournment is not found in the statute or in any by-law produced. An adjournment is not the act of individuals, but of the body itself, and, if the council is not present by a quorum, it cannot by way of adjournment act in the matter of stating a time in the future to reconvene. Dillon on Municipal Corporations, § 292; State ex rel. v. Smith, 22 Minn. 218; Price v. Grand Rapids & Indiana Ry. Co., 13 Ind. 58; State ex rel. Laughlin v. Porter, 113 Ind. 79, 14 N. E. 883.

At section 292, Dillon's Municipal Corporations (4th Ed.) it is said:

"Acts done when less than a legal quorum is present, or which were not concurred in by the requisite number, are void."

It was held in State ex rel. v. Smith, 22 Minn. 218, that less than a quorum could not adjourn a meeting of the common council. In the case of Price v. Grand Rapids & Indiana Railroad Company, 13 Ind. 58, it was held that, where a charter of a corporation contains no special provision upon the subject, less than a majority of the board of directors have no power to transact business; that their acts are absolutely void, and the corporation cannot ratify them. In the case of State ex rel. Laughlin v. Porter, 113 Ind. 79, 14 N. E. 883, it was held, Mitchell, J., writing the opinion, that it is essential to the validity of an appointment of county superintendent that a quorum of the township trustees shall be present at the time, and that an appointment by less than a majority of the whole number is void. Among other things, the court said:

"It is a general rule, unless some provision to the contrary, that, where several persons are authorized to exercise a power, all the persons authorized must be present in order that the power may be exercised. In the absence of the above statute, the act conferring the authority being silent on the subject, it might, therefore, be a question whether a number less than the whole could exercise the power. * * * However that may be, it is quite certain that no statutory authority exists which authorizes a number less than a majority of those constituting the body to exercise the power of appointment. The general rule is that when a council or collective body, consisting of a given number of members, is authorized by a statute to do an act, or to transact business, authority is thereby given to that body to act upon the subject committed to it, or to transact the business which it is authorized to conduct, whenever a majority of the members thereof are lawfully present. * * * The body cannot act without the presence of a quorum, and the act of a quorum is the act of the body. * * * Acts done when less than a quorum were present, or which were not concurred in by the requisite number, are void."

See, also, City of Logansport v. Legg, 20 Ind. 315; Pimental et al. v. City of San Francisco, 21 Cal. 352, 361; McCracken v. City of San Francisco, 16 Cal. 591; Indiana Municipal Law, by Thornton, p. 99, and cases there cited; People ex rel. Loe v. Batchelor, 22 N. Y. 128.

In the case of Brookbank v. City of Jeffersonville, 41 Ind. 406, it was held that, on appeal under the old law from the precept, the transcript had to show that a quorum of the common council were present when the business was transacted. In the agreed statement of facts it appears that at the regular meeting of the common council held November 22, 1892, there were present 18 of the councilmen, "and the city record of November 8th and 9th, 1892 (printed copies of which have been delivered to each member), was presented to and considered by said common council, and unanimously approved by it, and signed by the mayor and attested by the clerk of said city in open council." These facts are relied upon by defendants' counsel as constituting ratification of the contract. The contract, however, is void for want of power in the members of the council present at the meeting of November 9, 1892, to make it, and, being void, the contract is not susceptible of ratification. Lewis v. City of Shreveport, 108 U. S. 282, 2 Sup. Ct. 634; 27 L. Ed. 728; Brady v. Mayor, etc., of New York, 20 N. Y. 312; Smith v. City of Newburgh, 77 N. Y. 130; Price v. G. R. & I. R. Co., 13 Ind. 58.

In Price v. Grand Rapids & Indiana Railroad Company, supra, less than a quorum of the directors of a corporation passed a resolution making an assessment upon the stock. It was contended that the assessment was void. There was also a contention that that void act of the board had been subsequently ratified. Amongst other things the court said (page 60):

"There being no special provision on the subject, less than a majority of all of the directors who composed the board have no power to transact the business of the company. It is, however, insisted that if, in point of fact, a majority of the board of directors had made the orders, they were ratified by the whole board, and by the corporation, in publishing the notice, bringing this suit, and by special demand, etc. * * * The orders, being passed by a minority, were absolutely void, because there was a defect of power; and the rule seems to be, that a void act is not susceptible of ratification."

By the law of Indiana the common council could be in legal session and enter into a valid contract by three methods: First, by meeting

in regular session as fixed by the by-laws, or by statute, a quorum being present; second, by an adjournment of a regular session by a vote of a majority of a quorum; third, by call of the mayor or five councilmen for a special meeting. The business attempted to be transacted at the meeting of November 9th was important public business, affecting property rights. If the Legislature intended that less than a majority of the council should have power to adjourn to meet at a future time, the legislative intent should appear in the statute by appropriate words. There being no such power expressly granted, such an intendment cannot be inferred. As said in Kyle v. Malin, 8 Ind. 34, 37:

"Particularly where the acts to be done more or less affect, or impair, or incumber private property, as in the case at bar, the powers granted must be strictly pursued. Possessing, as these municipal corporations do, the power of assessment and sale of private property, often wielded by the indiscreet or the selfish, the grossest abuses would inevitably follow, if they were not held strictly within the powers granted and the means prescribed for the execution of these powers."

It is contended that the assessment is void because the name of the railroad company owning the land attempted to be assessed is not given, and for the further reason that the land is not sufficiently described. The lien is created upon the making of the assessment by the common council in accordance with the provisions of section 7 of the act. That section provides that, after a hearing is accorded the property owners, the council "may adopt, alter or amend" the report of the committee which is required by section 6, and "shall assess against the several lots or parcels of ground the several amounts which shall be assessed for and on account of such improvement." Section 6 provides that the report of the committee shall contain, among other things:

"Seventh. In the case of the construction of a sewer, a description of each lot or parcel of lot benefited thereby, together with the owner's name."

The preceding clause, referring to street improvements, is as follows:

"Sixth. The full description, together with the owner's name, of each lot or parcel of ground bordering on said street so improved."

Since the law charges each owner of property abutting on a street or alley which is being improved the proportionate cost thereof, and in the case of sewer construction the cost is to be charged by the council upon property owners which it may deem to be "benefited thereby," without regard to whether their property borders on the street where the sewer is constructed, the necessity for a description which shall be full and sufficient upon which the lien is operative is the greater in the case of sewer assessments than in the case of street assessments.

The estimate which embodied the assessments in controversy, as we have seen, named the owner thus: "P. Ft. W. & C. Railway Co." Was this a substantial compliance with the statute? Under a law of Indiana for the opening of a highway it was required that the names of the owners of the land on which the highway should be established should be stated in the petition. In Hays v. Campbell, 17 Ind. 430, it was held to be essential to the validity of the proceedings for the petition to contain the name of the landowner, and that that objection would

be fatal at any stage of the proceeding. In speaking of the absence of the name of the landowner, the court said:

"In the absence of this essential requisite of the petition in the case at bar, we are of opinion that the county board was not authorized to act upon the subject. * * * As the whole proceeding had been thus built upon an insufficient and invalid foundation, the court did right to dismiss it, because at some future stage of its progress it might, perhaps, have involved persons in serious litigation, in attempting to open and establish said road."

The same question was involved in the case of Hughes v. Sellers et al., 34 Ind. 337, and it was held that the defect might be taken advantage of in arrest of judgment. In speaking of the petition, the court said (page 340):

"It should, then, have given the names of those owners; and it is not giving the names of the owners to say that they are the heirs of a designated person. as is done with reference to two or more of the tracts of the land over which this highway is to run."

In the case of Young, Trustee, v. Wells, etc., 97 Ind. 410, it was held that an assessment against a person for the construction of a ditch, whose name is not given in the petition, may be enjoined.

And so in the case of Troyer et al. v. Dyar, Commissioner of Drainage, 102 Ind. 396, 1 N. E. 728, it was held that, if the name of the owner of land was not given in the petition, an assessment against him or his land is void. The action was for an injunction against an assessment, and amongst other things it was said (page 398, 102 Ind., page 729, 1 N. E.):

"The question turns upon whether the owner of land against which benefits are assessed must be named in the petition. If this was necessary, then naming some one else cannot be sufficient. It has been decided that it is necessary to name the owner, and this decides the question."

And where the statute authorizes a lien to be created upon the condition, among others, that the name of the owner shall be stated in the record of the proceeding or the estimate, it would seem, upon principle, obvious that nothing short of the full name of the owner to be charged, if known, shall be given. It is held in Vawter v. Gilliland, 55 Ind. 278, that where the petition for the location of a highway, in alleging the names of the owners of land affected by the construction thereof, only sets out the initials of the Christian name, or the partnership name only, of any such owners, such petition is fatally defective on a motion in arrest of judgment. To the same effect are People v. Whipple, 47 Cal. 591; Crawford v. Schmidt, 47 Cal. 617; Smith v. Davis, 30 Cal. 537; Cruger v. Dougherty, 43 N. Y. 107, 116–119; Whitney v. Thomas, 23 N. Y. 281, 284; Accola v. Chicago, Burlington & Quincy R. R. Co., 70 Iowa, 185, 30 N. W. 503.

In Accola v. Chicago, Burlington & Quincy R. R. Co., supra, it was held that the court could not take judicial notice of the letters C. B. & Q. R. Co., as constituting the name of the defendant Chicago, Burlington & Quincy Railroad Company, and that assuming to name that company by those initials did not name it properly as a defendant. The court, referring to the initials, said:

"They, of course, do not constitute its legal name. But it is stated that they are the name by which it is properly known, and that the court can

take judicial notice of such facts; but, in our opinion, we should be going too far to hold that we can."

The descriptions of the three tracts assessed are:

"Part of W ½ of E ½ of N. E. ¼ of Section 12, Town 30 N. Range 12 East between the P. Ft. W. & C. and Wabash Railroads and known as the Stock Yards.

"Space south of right of way and W. of Walton Ave.

"Right of way between Gay Street and Walton Ave."

The court is of opinion that each of these descriptions is void for uncertainty. The rule is well stated by Judge Elliott (Roads and Streets [2d Ed.] § 597) as follows:

"The assessment should contain such a description of the property upon which it is laid as will enable the officers whose duty it is to enforce it to properly convey title in the event of a sale. It must be such a description as will supply the means of identification and enable a surveyor to locate the specific property."

See, also, Naltner v. Blake, 56 Ind. 127; L. E. & W. Ry. Co. v. Walters, 9 Ind. App. 684, 37 N. E. 295; Becker v. Baltimore & Ohio, etc., Co., 17 Ind. App. 324, 46 N. E. 685; Whittelsey v. Beall, 5 Blackf. 143; Nolte v. Libbert, Adm'r, 34 Ind. 163; White v. Hyatt, 40 Ind. 385; Struble v. Neighbert, 41 Ind. 344; Gigos v. Cochran, 54 Ind. 593; Easter v. Severin, 64 Ind. 375; Buck v. Axt, 85 Ind. 512; Cochran v. Utt, 42 Ind. 267; Munger v. Green, 20 Ind. 38; Shoemaker v. McMonigle, 86 Ind. 421.

The answers of defendants plead facts, and some evidence is in the record, intended to supplement the descriptions of the three tracts of land in question—as, for instance, that the first-named tract is designated on the public maps of the city as the "Stock Yards," and is so generally known; that the second tract is the only space or tract owned by said company south of its right of way and west of Walton avenue; and that the third tract is all the right of way of said company between Gay street on the west and Walton avenue on the east, and is fenced, etc. Undoubtedly, when the transaction is one of contract between parties, descriptions may, when no intervening rights have accrued, be reformed so as to include the lands intended by the parties to be conveyed. But this is not a case within that rule, and parol evidence, or evidence aliunde, is inadmissible to render certain the descriptions in question. Lewis v. Owen, 64 Ind. 446; Porter v. Byrne, 10 Ind. 146, 71 Am. Dec. 305; Howell v. Zerbee, 26 Ind. 214; Miller v. Kolb, 47 Ind. 220; Rogers v. Abbott, 37 Ind. 138; Armstrong v. Short, 95 Ind. 326; Eel River Drainage Ass'n v. Topp, 16 Ind. 242; Keane v. Cannovan, 21 Cal. 291, 82 Am. Rep. 738; In re N. Y. Cent. & H. R. R. Co., 70 N. Y. 191; Stewart v. Aten's Lessee, 5 Ohio St. 258.

In the case of Lewis v. Owen et al., 64 Ind. 446, a mortgage was foreclosed, and the property was sold as:

"Part of lot 78 in the Eastern Enlargement to the town (now city) of Greencastle, containing ¼ of an acre, and bounded as follows, to wit: On the west side by a lot formerly owned by Robert Turner, on the north by a lot formerly owned by John H. Bellamy, and on the east by William Atherton, and on the south by Hanna street, in Putnam county, state of Indiana."

In relation to that description and the effort to have it reformed in the sheriff's deed, the court said:

"Deeds of conveyance, as to the description of the premises conveyed, must be construed liberally, and, in cases of this kind, will be upheld whenever the description is sufficient to direct the sheriff in the execution of a writ of possession, without the exercise of any other than executive powers; otherwise the deed must be held void for uncertainty. By the description before us it would be impossible for the sheriff to find the premises by the face of his writ, and without the exercise of powers not granted to him as an officer. We think the deed set out in this case is void for uncertainty in the description of the premises. * * * Can a sheriff's deed be reformed in the description of the premises, or can the defects in the description be aided by extrinsic averments? We think not. To do so would be to change the effect of the proceedings and decree upon which it is founded. A final judgment of a court cannot be affected in that way. Upon principle, and by authority, this question is well settled."

In Eel River Drainage Association v. Topp et al., 16 Ind. 242, in speaking of the description of land in the assessment, it was said:

"It is undoubtedly necessary that the land should be described with such degree of certainty as to make the record notice, and in the judgment for its sale with such certainty as will enable the sheriff to identify it in proceedings to sell. * * * To enable the court to be thus certain, the appraiser's description should be as certain as is necessary in a mortgage, or notice of mechanic's lien, that the records may show the identity of the land in two descriptions."

The case of Keane v. Cannovan et al., 21 Cal. 291, 82 Am. Rep. 738, arose under the tax laws of California, which required a description of the lands taxed, as our statute requires a description of the lands assessed. After holding that the description of the land assessed was insufficient, Judge Field, later Justice Field, said (page 302, 21 Cal., 82 Am. Rep. 738):

"It is not sufficient that a similar description, in a contract or conveyance between individuals, might be shown by parol evidence to have been intended for particular premises. The description must be certain of itself, and not such as to require evidence aliunde to render it certain. The statute requires the collector in his publication of the delinquent list to give such a condensed description of the property that it may be easily known. A description which cannot be made intelligible without resort to extrinsic evidence is not one of this character. Certainty in the description is required to apprise the owner that his property is advertised for sale, and to enable him to prevent the sale by the payment of the taxes thereon, and to impart information to bidders of the actual extent and location of the premises to be sold. All subsequent proceedings depend upon this certainty. An inaccurate or an uncertain description defeats every subsequent step taken, and, as we have already said, the uncertainty cannot be cured by evidence aliunde. 'A description,' says Blackwell, 'sufficiently clear to convey land between man and man, and which, if contained in an agreement to convey, would authorize a court of equity to decree a specific execution, will not answer in a proceeding to enforce the collection of a tax.' In the case of private transactions, the courts, in construing the document, endeavor to collect the intention of the parties, and give that intention effect. If a latent ambiguity exists in the description, parol evidence is resorted to for the purpose of explaining it and giving to the intention of the parties complete operation; and when the estate intended to be conveyed is sufficiently described in the deed or other writing, the addition of a circumstance, false or mistaken, will be rejected as surplusage in order to carry the intention into effect. But in these tax proceedings the owner of the estate has nothing to do. He intends nothing. The government is acting through its agents in hostility to him, and with a view of enforcing the collection of a tax from him."

In Stewart v. Aten's Lessee, 5 Ohio St. 258, the lands were assessed to a person as 150 acres, part of section 36, etc. In holding the description void, the court said:

"Proof that the person named as owner in fact owned 150 acres somewhere in the northwest part of the section has never been permitted or recognized as a mode of helping out a defective description in a tax duplicate."

In Sharpe v. Dillman et al., 77 Ind. 280, the plaintiff sought to quiet title to land under a tax deed. The land was assessed in the name of the proper owner, but described as "a part of the southwest quarter of the southeast quarter, section 14, of township 24, of range 4." It was held that the sale under that description was void, and that the purchaser could not even have a lien under the liberal statutes of Indiana, providing for a lien upon the failure of the title at a tax sale. The court said (page 285):

"But if the land cannot be ascertained by the description of it, then there can be no remedy under said section 257, because there can be no decree against the owner of land that cannot be ascertained, and there can be no lien upon such land."

It follows that the assessment is void, not only for the reason that the owner of the land sought to be assessed was not named, but also for the reason that the three descriptions are severally void for uncertainty.

It is argued by counsel for complainant that the assessment is illegal for the reason that it was not made as required by the act of March 4, 1893 (Acts 1893, p. 332, c. 149; Burns' Ann. St. 1901, § 4274). The assessment was made August 22, 1893, and the act in question became a law March 4, 1893, repealing all laws in conflict therewith. The act provides, among other things, that when a sewer is constructed in a street, which is adapted for receiving sewage from collateral sewers or drains, an amount equal to what an adequate local sewer would cost shall be assessed upon the property abutting upon the street, and the balance of the cost of the sewer shall be assessed upon all property benefited, including the property abutting upon the street. No part of the railroad property adjoins any street upon which the six-foot sewer is located. The sewer, however, was ordered, the contract let, and the work practically completed before the passage of the act. Section 2 of the act must be read in connection with section 1 (see section 4273, Burns' Ann. St. 1901), prescribing the mode of assessment for local sewers, which commences as follows:

"That whenever the * * * common council * * * shall desire to construct sewers," etc.

The language of the act prescribes modes of assessment in sewers constructed or ordered after the passage of the act.

It is finally contended by complainant that the assessment is void as against both the Pittsburg, Ft. Wayne & Chicago Railway Company and the complainant, the Pennsylvania Company, for the reason that the complainant was in no way a party to the proceedings prior to the making of the assessment, nor at any other time. The statute involved here provides that the owners of lots, etc., shall be liable for the cost of the improvement (section 4288, Burns' Ann. St. 1901); and in mak-

ing the estimate, the engineer shall state the name of each property owner (section 4290). The Pennsylvania Company, as lessee for a term of 999 years, in possession under a recorded lease, is undoubtedly an owner. Elliott on Railroads, §§ 1023, 1025; Elliott, Roads and Streets, § 308; Gimbel v. Stolte, Adm'r, 59 Ind. 446; Brown et al. v. Powell, 25 Pa. 229; Turnpike Road Co. v. Brosi, 22 Pa. 29; Pennsylvania Co. v. Eby, 107 Pa. 166; B. & O. R. R. Co. v. Walker, 45 Ohio St. 577, 16 N. E. 475; Choteau v. Thompson, 2 Ohio St. 114; Mayor, etc., of Baltimore v. Canton Co., 63 Md. 218; Brush v. Detroit, 32 Mich. 43; 15 Ency. Pl. & Pr. 611. See, also, Sherwood, Adm'r, v. City of Lafayette, 109 Ind. 411, 10 N. E. 89, 58 Am. Rep. 414; Columbus, etc., Ry. Co. v. Board, 65 Ind. 427, 436.

But it is also true that the lessor company is an "owner," and it is contended by counsel for defendants that notice to the owner of the fee satisfies the requirements of the statute, and it was unnecessary, therefore, to name the Pennsylvania Company, lessee. Conceding, without deciding, that notice to the lessor company was sufficient notice to its lessee, the appearance and objection of the Pittsburg, Ft. Wayne & Chicago Railway Company, at the hearing before the committee to hear objections as to the necessity for the construction of the sewer, implied no notice of the intention of the council to thereafter determine that its property was or would be "benefited thereby" and assessed accordingly.

It has been held that section 2 of the act requiring public notice to be given of the passage of the resolution, stating "the time and place when and where the property owners along the line of said proposed improvement can make objections to the necessity for the construction thereof," affords the property owner no remedy beyond the right to advise the council with respect to the necessity for the improvement. Quill v. City of Indianapolis, 124 Ind. 292, 295, 296, 23 N. E. 788, 7 L. R. A. 681. As said by the Supreme Court in the case last cited:

"The right to a hearing is secured to each property owner by another provision of the act."

It will be noticed, also, that in street or alley improvements the persons to be charged with the cost thereof are specified by the law as "owners of lots or parts of lots bordering on such street or alley, or the part thereof to be improved," while in sewer construction the persons to be charged are owners of lands, lots, and parts of lots "benefited thereby," and upon the council is imposed by the law the duty of determining what lands, lots, or parts of lots are "benefited" by such sewer construction. In advance of such determination, it is difficult to see how notice may be given to owners whose lands are to be benefited. Section 7, read in the light of the provisions of sections 3 and 6, is therefore the legislative direction for a notice and hearing to each property owner "benefited thereby" before the assessment shall be made which fastens the lien. The orderly procedure would seem to require notice to the property owners whose property is found to be benefited, after such determination has been made. In the present case the determination what property was benefited and the assessments therefor were declared at the same time.

There is no doubt that the Legislature could itself determine what property should bear the burden of the cost, and that it could delegate this power to determine what property is benefited to the council. In the former case, its determination must appear in the statute, as it does appear with regard to street and alley improvements. In the latter case the tribunal to whom the duty is delegated to find what property is benefited thereby should act before it can be said that either a general notice, or a notice in which the property owners are named, is effective to convey notice by publication to the parties to be charged. In the case of sewer construction under this act, manifestly, no notice to property owners "benefited thereby" can be given in advance of any corporate action by the common council finding what property is "benefited thereby." But in this case the proceedings are void upon other grounds, already stated.

Nearly four months after this suit was commenced, a petition was filed with the common council by the defendant Cole, reciting in brief the grounds upon which the complainant claimed the assessments were void, referring to the complaint filed in this cause, and praying that the council "take such steps in relation to said report and estimate as may be advisable in the matter for the purposes of collection of such assessments." Pursuant thereto the council passed a resolution referring the estimate and report made on July 25, 1893, in the matter of the six-foot sewer to a special committee, for hearing of objections, and ordering the city clerk to give two weeks' notice by publication of the hearing by said special committee. The notice so published named the complainant, as well as its lessor, the Pittsburg, Ft. Wayne & Chicago Railway Company. The report of that special committee finds "that only three tracts of land in said city, owned by the P., Ft. W. & C. Ry. Co., and leased to the Penn. Co., were affected by and assessed for the construction of said sewer, viz.;" setting out the full description by metes and bounds of the three tracts of land. The report was adopted, and the estimate and report of the city civil engineer was, on motion, altered and amended in accordance therewith, and the clerk was ordered to make such changes on the estimate record. These proceedings, had after the commencement and during the pendency of this suit, can have no effect to render valid what was and is void. While the proceeding is before the common council it may alter or amend any interlocutory order or estimate. But when a final estimate is made, as was made in this case, on August 22, 1893, the council's power to alter or amend the estimate, or any part of its proceedings, ceases. Doctor et al. v. Hartman, 74 Ind. 221; Spaulding et al. v. Baxter et al., 25 Ind. App. 485, 58 N. E. 551. Nor can such proceedings had during the pendency of this case affect the rights of the complainant. Col., Chi. & Ind. Cent. Ry. Co. v. Board of Com. of Grant County, 65 Ind. 427, 440.

The doctrine of estoppel is invoked by defendants in their brief as follows:

"When jurisdiction of the subject-matter and person of the owner of the property to be charged appears, irregularities and defects in proceedings for public improvements prosecuted under color of the statute cannot be urged for the first time after completion of the work to defeat the contractor's lien. Ross v. Stackhouse, 114 Ind. 200, 205, 16 N. E. 501; Willard v. Albertson, 23

Ind. App. 162, 53 N. E. 1076, 54 N. E. 446; Lewis v. Albertson, 23 Ind. App. 147, 161, 53 N. E. 1071; Baker v. Clem, 102 Ind. 109, 26 N. E. 215; Board v. Plotner, 149 Ind. 116, 120, 48 N. E. 635; Cluggish v. Koons, 15 Ind. App. 599, 604, 43 N. E. 158."

In Ross v. Stackhouse, supra, it is said:

"Unless the proceedings are so radically defective as to be totally void, a contractor, who has executed the work, may invoke the doctrine of estoppel for his protection. Where the record of the proceedings shows color of jurisdiction, the property owner, until the contrary appears, will be presumed to have had notice of the progress of an improvement from which his property was being benefited. Taber v. Ferguson, 109 Ind. 206, 9 N. E. 721. And having notice, and failing to object, and arrest the improvement, until the benefit has accrued, he will be deemed to have ratified the proceedings as fully as does one who receives the proceeds of a judgment or sale, with knowledge of inherent infirmities which render it voidable or even void. Fletcher v. McGill, 110 Ind. 395, 404, 10 N. E. 651, 11 N. E. 779. Special assessments for street and other similar improvements are upheld upon the theory that each lot or tract of land assessed is benefited in a special and peculiar manner, in a sum equal to the amount estimated or assessed against it. The lien is, therefore, enforceable against the land, upon the theory that the owner has received a personal and pecuniary benefit by the improvement, which the citizens do not share in common. Heick v. Voight, 110 Ind. 279, 11 N. E. 306; Lipes v. Hand, 104 Ind. 503, 1 N. E. 871, 4 N. E. 160; Chamberlain v. Cleveland, 34 Ohio St. 551; Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289; Hammett v. Philadelphia, 65 Pa. 146, 3 Am. Rep. 615. Unless, therefore, the law under which the assessment is imposed makes no provision for notice, or unless the proceedings under which the proposed improvement is to be made are totally void for want of the observance of some condition necessary to the attaching of jurisdiction, the work cannot be arrested at any stage; and in any event, one who acquiesces, with knowledge, until after the improvement has been completed, cannot escape payment for the actual benefits received, even though the proceedings turn out to be void, provided the contractor proceeded in good faith and without notice from the property owner. He cannot enjoy the benefits and escape the burden, unless he interferes or gives notice before the benefit is received."

The defense of estoppel is not available, unless specifically pleaded. Bates, Federal Equity Procedure, §§ 310–313; Mabury v. Louisville & J. Ferry Co., 60 Fed. 645, 656, 9 C. C. A. 174; Wood v. Ostram et al., 29 Ind. 177; Center School Township v. State ex rel. Board of School Commissioners of City of Indianapolis, 150 Ind. 168, 173, 49 N. E. 961. In the case last cited, it is said:

"But, even though it could be said that any elements of good faith or estoppel in any manner enter into the case at bar, they are not presented by the complaint, and, if they existed, in order to have been available, they should have been interposed by way of an answer; for the settled rule is that facts creating an estoppel must, under our Code, be specially pleaded. Robbins v. Magee, 76 Ind. 381; City of Delphi v. Startzman, 104 Ind. 343, 3 N. E. 937."

But in this case the facts shown by the record do not disclose the elements of estoppel. The 6-foot sewer, for which the assessments were laid, was 700 feet distant from complainant's property at its nearest point. Prior to the completion of the work there was no notice of any kind attempted to be given of intention to assess complainant's property. The benefit to the property was declared to exist simultaneously with the approval of the final estimate, after the completion of the work, which fastened the lien. That was August 22, 1893, and there was no unreasonable delay in the commencement of this suit on October 23,

1893. Nor can there be an estoppel where, as here, the proceeding is void. Budd v. Kraus, 79 Ind. 137; Crawfordsville Music Hall Ass'n v. Clements, 12 Ind. App. 464, 39 N. E. 540, 40 N. E. 752; City of Terre Haute et al. v. Mack, 139 Ind. 99, 110, 38 N. E. 468; Lyon v. Town of Tonawanda (C. C.) 98 Fed. 361; Cowley v. City of Spokane (C. C.) 99 Fed. 840; Pavy et al. v. Greensburg & Columbus Turnpike Co., 42 Ind. 400; Hopkins v. Greensburgh, Kingston & Clarksburg Turnpike Co., 40 Ind. 44.

For the foregoing reasons, there will be a decree entered quieting the title of complainant to the property described in the complaint as against the assessments in question, and a perpetual injunction awarded to restrain the collection of such assessments.